433 So.2d 628 (1983)
TAMPA BAY MOVING SYSTEMS, INC., and Continental Insurance Company, Appellants,
v.
Gerald K. FREDERICK, Appellee.
No. AN-182.
District Court of Appeal of Florida, First District.
June 23, 1983.
*629 C. Kenneth Stuart, Jr., of Holland & Knight, Bartow, for appellants.
Clifford R. Opp, Jr., of Peavyhouse, Giglio, Grant, Clark, Charlton & Opp, Tampa, for appellee.
WENTWORTH, Judge.
The employer and carrier (E/C) appeal an order of the deputy commissioner finding that claimant suffered a six percent permanent impairment of the body as a whole and awarding wage loss benefits. Among other things, the E/C argue that the finding of a permanent impairment was not based on competent substantial evidence. We disagree and affirm.
Appellee was injured in the course and scope of his employment when he fell off the back of a moving van while loading furniture. He was initially treated for a broken wrist, but because he continued to complain of headaches and back and leg pain he was referred to Dr. Eckart, an orthopedic physician. In a deposition taken February 21, 1981, Dr. Eckart stated that he was unable to corroborate claimant's symptomatology with his physical examination, and was of the opinion that claimant had probably suffered a simple sprain that should clear up. By a letter dated November 23, 1981, Dr. Eckart informed the attorney for the E/C that in his opinion maximum medical improvement had been reached on September 14, 1981, with no permanent impairment. However, he continued to see claimant and a second electromyogram was performed sometime between November of 1981 and March 11, 1982, when Dr. Eckart responded to further inquiries from the E/C. In that letter, Dr. Eckart stated:
In my letter dated to you November 23, 1981, it was my opinion that the patient had sustained no permanent physical impairment. Since then, I have seen the patient back in my office on January 15, 1982, 1-28-82 and 2-25-82. An electromyogram was repeated and it again showed evidence of a trace of acute denervation in the right lower extremity. This would account for the patient's continued symptomatology. The symptomatology is a result of an injury. I feel that he has sustained a permanent injury. He is not a candidate for surgery. He may at the present continue in his present occupation without any restrictions or limitations. It is felt that he is with a 6% permanent physical impairment to his body as a whole as a result of a sprain to his lumbar spine.
A hearing was held on May 17, 1982, on appellee's claim for temporary partial disability benefits, wage loss benefits and continued medical treatment. Dr. Eckart's medical reports, including the above-quoted letter, and his February 1981 deposition were admitted into evidence. In adopting Dr. Eckart's impairment rating, the deputy found:
That as per medical report of Dr. James R. Eckart, M.D., dated March 11, 1982, said report having been stipulated into evidence, I find that the Claimant reached maximum medical improvement on February 25, 1982, and sustained a 6% permanent partial impairment to the body as a whole as a result of a sprain of the lumbar spine. Although Dr. Eckart's report of March 11, 1982, does not refer to the Guides to the Evaluation of Permanent Impairment as set forth by the American Medical Association, I find that application of those guides to this injury would support Dr. Eckart's opinion. Based on the testimony of the Claimant, I also find that the impairment is a result of the industrial accident which occurred *630 on February 12, 1981, and the injury has limited the Claimant's ability to lift and carry on a sustained basis. (emphasis supplied)
The jist of the E/C's attack on the above-quoted finding may be summarized as an argument that, since Dr. Eckart did not specifically state his opinion to be based on the AMA Guides, there was no competent substantial evidence from which the deputy could have found that the six percent impairment was based on the Guides. The argument displays a misconception as to the respective roles of expert medical witnesses and the deputy commissioners in the resolution of workers' compensation claims. It should not be, but sometimes is, necessary to point out that the deputy, not a doctor, is the finder and adjudicator of fact, including medical facts, subject only to specific statutory requirements for the evidentiary predicate for certain determinations.
Section 440.15(3)(a)3 provides that "the division shall establish and use a schedule for determining the existence and degree of permanent impairment based upon medically or scientifically demonstrable findings." Until another schedule is adopted, the American Medical Association Guides are to be used. The E/C in this case are eminently correct in asserting that this section is mandatory. They are incorrect, however, in the position that only doctors are competent to apply the Guides. However tempting or customary that delegation might be, it is the deputy who has the responsibility and authority to determine whether an impairment rating falls within the prescribed regulatory standards. That the evidence supporting the determination does not contain the words "based on the AMA Guides" does not render it incompetent, and no such objection was ever stated before the deputy in this case. See Spring Air Mattress Co. v. Cox, 413 So.2d 1265 (Fla. 1982); Racz v. Chennault, Inc., 418 So.2d 413 (Fla. 1st DCA 1982). On the contrary, we have held that a medical witness's opinion, not expressly based on the Guides, may nonetheless be an adequate basis for a deputy's finding that the requisite permanent impairment exists. Deinema v. Pierpoint Condominiums, 415 So.2d 811 (Fla. 1st DCA 1982); Racz, supra.
In their brief, the E/C refer to the specific chapter which concerns back injuries, and attempt to demonstrate that the evidence does not in fact support the finding of an impairment according to the Guides. However, this argument was never presented to the deputy. On the contrary, the E/C stipulated to the admissibility of Dr. Eckart's report without objection. The deputy orally announced his decision at the close of the hearing, and again the E/C did not, either at that point or within the thirty days before the order became final, raise the issue now argued. We decline in these circumstances to measure the quality of the evidence against the prescribed standards when the issue is presented for the first time on appeal. E.C. Goldman Roofing Inc. v. Rogers, 418 So.2d 426 (Fla. 1st DCA 1982).
In this case, where there was presented no evidence that the doctor's impairment rating was substantively incorrect under the Guides, and the E/C had ample opportunity to so prove or demonstrate by specific argument, the deputy showed conscientious cognizance of his responsibility to make and state the necessary determination that the evidence of impairment meets the prescribed criteria.[1] His finding should not, of course, be reversed absent a clear showing of error. No such showing has been made by appellant's argument in this case.
Affirmed.
ROBERT P. SMITH, Jr., C.J., and ZEHMER, J., concur.
NOTES
[1] The burden on the deputy, and ultimately this court, will be significantly lighter when the expert medical testimony and/or other evidence is presented with express reference to the Guides, and we do not encourage or condone ambiguity of medical evidence in this respect.