606 So.2d 658 (1992)
Juan B. DELGADO, Appellant,
v.
BLANCO & SONS CATERING and Fireman's Fund Insurance, Appellees.
No. 91-1850.
District Court of Appeal of Florida, First District.
September 17, 1992.
*659 Susan W. Fox of MacFarlane, Ferguson, Allison & Kelly, Tampa, and Paul Sidney Elliott, Tampa, for appellant.
Laurie R. Leon of Sussman, Byrd, Hektner & Mayfield, Tampa, for appellees.
ERVIN, Judge.
In this workers' compensation appeal, Juan B. Delgado, the claimant/appellant, appeals the denial of his claim for the surgical repair of his hernia and temporary total disability (TTD) benefits though December 28, 1989. We reverse and remand, because claimant's preexisting hernia was aggravated by the work-related accident, thereby necessitating the surgery.
Claimant was employed as a deli sand-wich maker for the employer, Blanco & Sons Catering. He had been diagnosed as having an inguinal hernia in 1987. Surgery was recommended, but claimant declined, and claimant continued working for the employer in that the hernia did not prevent him from performing his job duties. On July 5, 1989, claimant was involved in an altercation with one of his employers. Following the incident, he was taken to the emergency room where his injuries were diagnosed as a fracture of the hip and an inguinal hernia.
Claimant was treated by Dr. Martinez, an orthopedist, for his fractured hip. While under his care, claimant was referred to Dr. Reddy, a general surgeon, for his hernia. Dr. Reddy recommended surgery, but delayed same while claimant was being treated for the hip fracture. On August 10, 1989, Dr. Martinez released claimant from his care and instructed him to return only on a PRN (as needed) basis. Dr. Reddy then performed surgery to repair claimant's hernia on September 6, 1989. Claimant was released from Dr. Reddy's care on December 28, 1989.
While finding the hip fracture was work-related and medical and disability benefits pertaining thereto compensable, the judge of compensation claims (JCC) denied any disability or medical benefits associated with the hernia, stating "that the overwhelming weight of the evidence is that this claimant's hernia condition was no worse after this incident than it was before, and that the surgery that was done to repair the hernia was surgery that was already needed and was not the result of any aggravation by this incident." The JCC thereupon directed that TTD benefits be paid for the period immediately following the accident through August 10, 1989, the date claimant was discharged by Dr. Martinez.
The record indisputably discloses that claimant had a preexisting hernia; however, the unrefuted medical evidence established through Dr. Reddy's testimony shows that claimant's hernia was aggravated by the work-related incident. Dr. Reddy specifically testified that the hernia caused more pain, tenderness, and discomfort following the altercation. Additionally, Dr. Reddy opined that the hernia surgery was required to repair the hernia due to the aggravation. He did admit that there was no objective way to tell whether claimant's condition was actually made worse due to the altercation, except by the history given to him by claimant; in our judgment, however, for the reasons stated infra, the history claimant gave Dr. Reddy was not refuted by other evidence in the record showing an earlier need for hernia repair.
Thus, there was no medical evidence on which the JCC could base a finding that claimant's condition was no worse following *660 the altercation than it was before or that the surgery was not the result of any aggravation of the hernia. The testimony by two of the employers, Robert and Rofino Blanco, that claimant had, prior to the altercation, complained frequently of hernia pain, that claimant had been taken in 1987 to Tampa General Hospital, and that claimant had been told by an unnamed doctor that he needed hernia surgery is not that kind of competent, substantial evidence essential to support a finding to the contrary. Neither did the medical records, wherein the existence of claimant's hernia was noted, of claimant's visits to the hospital in September 1987 and February 1989 conflict with Dr. Reddy's opinion. Rather, such evidence merely established the presence of the preexisting condition. In fact, at the time Dr. Reddy's deposition was taken, Dr. Reddy had reviewed the prior medical records of claimant's preexisting hernia condition, and, despite his knowledge of claimant's prior condition, his opinion that claimant's prior herniated condition had been aggravated during the altercation remained unchanged. Indeed, Dr. Reddy stated that the facts contained in the medical records relating to claimant's preexisting condition were consistent with his findings.
Dr. Reddy's opinion of aggravation was, moreover, corroborated by other evidence in the record showing that prior to the altercation claimant's preexisting condition had never disabled him from working. In fact, the record clearly shows that claimant continued to perform his job after the initial diagnosis, albeit with occasional pain. In cases such as this, when a preexisting disease is aggravated by a work-related accident, the resulting disability must be considered as falling into one of the following three categories:
(1) that which resulted directly and solely from the accident and which would have occurred even in the absence of the pre-existing disease; (2) that which resulted from the acceleration or aggravation of the pre-existing disease by the accident; and (3) that which resulted from the normal progress of the disease and would have existed had the accident never occurred.
Evans v. Florida Indus. Comm'n, 196 So.2d 748, 752 (Fla. 1967). See also Escambia County Council on Aging v. Goldsmith, 500 So.2d 626, 629 (Fla. 1st DCA 1986) (quoting Evans). Disability falling within the first two categories is compensable. Evans, 196 So.2d at 752; Goldsmith, 500 So.2d at 629 (quoting Evans). Thus, if apportionment were appropriate, which it is not under the circumstances at bar,[1] apportionment between the employer and the claimant as to a preexisting condition would be only warranted "when and to the extent that the pre-existing disease either, (1) was disabling at the time of the accident and continued to be so at the time the award is made or (2) was producing no disability at the time of the accident but through its normal progress is doing so at the time ... an award is made." Evans, 196 So.2d at 752-53; Goldsmith, 500 So.2d at 629 (quoting Evans).
Indisputably, the instant case does not fall into the first category  the record clearly shows claimant's hernia did not result directly and solely from the altercation with the employer. Moreover, it cannot be said that claimant's hernia surgery resulted from the normal progress of the disease  the record clearly established that claimant was able to perform his job duties continuously from the 1987 diagnosis until the July 5, 1989 altercation. Claimant's condition thus falls into the second category  that which resulted from an aggravation of his preexisting hernia, as was testified to by Dr. Reddy.
In deciding that claimant's hernia was aggravated during the industrial accident, we have not overlooked case law authority recognizing that a JCC may reject expert medical testimony and base a compensation decision on lay testimony or other such evidence if the issue involves matters within the knowledge and sensory experience of *661 lay persons, such as the employee's inability to perform work. See Jackson v. Dade County Sch. Bd., 454 So.2d 765, 766 (Fla. 1st DCA 1984). In the present case, there was, however, no evidence that claimant was unable to work, or that he was suffering from any disability prior to the accident in question. Hence, the judge's essential finding that claimant's preexisting condition was no worse following the accident than it was before is simply not supported by competent, substantial evidence, in that there was no evidence in the record refuting Dr. Reddy's opinion that claimant's prior condition was aggravated by the work-related accident. As Professor Larson explains: "Preexisting disease or infirmity of the employee does not disqualify a claim under the `arising out of employment' requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought." 1 Arthur Larson, The Law of Workmen's Compensation § 12.21, at 3-381 (footnotes omitted). Professor Larson continues that "in practice most of the problems in this area are medical rather than legal." Id., § 12.24, at 3-452.
Because claimant was not "disabled"[2] from working up until the time of his work-related accident, the aggravation of his preexisting condition must be considered compensable. See McGarity v. Merit Elec. Co., 478 So.2d 1074 (Fla. 1st DCA 1985); Kuczkowski v. Bethlehem Steel Corp., 90 A.D.2d 612, 456 N.Y.S.2d 166, aff'd, 58 N.Y.2d 946, 460 N.Y.S.2d 533, 447 N.E.2d 81 (1983). Compare Padrick Chevrolet Co. v. Crosby, 75 So.2d 762 (Fla. 1954) (finding preexisting hernia condition compensable, but requiring apportionment under statute then in effect).
REVERSED and REMANDED for further proceedings.
SMITH, J., concurs.
KAHN, J., dissents with written opinion.
KAHN, Judge, dissenting.
It is extremely important to remember that while doctors always give testimony as to causation, such expert opinion is not sufficient to eliminate the necessity of proving the foundation facts necessary to support the opinion. Harris v. Josephs of Greater Miami, Inc., 122 So.2d 561, 562 (Fla. 1960). "The opinion of the expert cannot constitute proof of the existence of facts necessary to the support of the opinion." Arkin Constr. Co. v. Simpkins, 99 So.2d 557, 561 (Fla. 1957). I hope that this court has not forgotten the wise observation made by Judge Wentworth in Tampa Bay Moving Systems, Inc. v. Frederick, 433 So.2d 628, 630 (Fla. 1st DCA 1983): "It should not be, but sometimes is, necessary to point out that the deputy, not a doctor, is the finder and adjudicator of fact, including medical facts... ."
The court's opinion, ultimately holding that medical treatment of claimant's hernia as well as payment of benefits during a period of recuperation after hernia surgery, are compensable is, I suggest, founded upon an incorrect premise. The majority devote the bulk of the opinion to a consideration of whether claimant's preexisting hernia condition was aggravated by the incident. Having determined that competent substantial evidence will not support a finding that the incident did not cause such aggravation, the majority concludes, "Hence, the judge's essential finding that claimant's preexisting condition was no worse following the accident than it was before is simply not supported by competent, substantial evidence, in that there was no evidence in the record refuting Dr. Reddy's opinion that claimant's prior condition was aggravated by the work-related accident." Op. 661.
*662 My review of the JCC's order in this case convinces me that the question of aggravation was in no way dispositive. Claimant sought medical benefits for a hip fracture and a hernia, and also temporary total disability benefits from the date of the injury through December 28, 1989, the date on which claimant was released from medical care after recuperating from the hernia surgery. The hip fracture and attendant period of disability are clearly work related, and as such, compensable. Thus the sole question on this appeal becomes whether the record contains competent substantial evidence to support the finding of the JCC that the hernia surgery was not, in fact, necessitated by an on-the-job injury.
The judge made the following findings:
While I find the trochanteric fracture to have been caused in this incident, I do not so find with the hernia. The evidence is quite clear that this Claimant had a preexisting hernia for which surgery had been recommended in the past and refused. Prior to the 1979 amendments to the Act, the `hernia' provisions were explicit that a hernia was not compensable if there was a preexisting hernia. This barrier was removed, and if the hernia is aggravated by trauma, it is now compensable as any other injury. I find, however, that the overwhelming weight of the evidence is that this Claimant's hernia condition was no worse after this incident that [sic] it was before, and that the surgery that was done to repair the hernia was surgery that was already needed and was not the result of any aggravation by this incident. While I do not believe the Employer's witnesses [sic] testimony that the Claimant was inebriated the night of this incident, I do find their testimony as to the difficulties the Claimant had with his hernia prior to this incident to be credible and supported by other evidence.
In my view, although the judge noted his finding that claimant's hernia was no worse after the incident, he also, and dispositively in my opinion, found that the hernia repair "was not the result of any aggravation by this incident." If this conclusion is supported by any evidence of record, then the judge of compensation claims must be affirmed.[1] The judge of compensation claims is, of course, entitled to consider and evaluate all evidence, both lay and professional, and may give greater weight to physical evidence and lay testimony than to scientific opinions of experts. Jeffers v. Pan American Envelope Co., 172 So.2d 577 (Fla. 1965). Accordingly, a review of the entire record, and not merely Dr. Reddy's opinion testimony, is necessitated. Nonetheless, the testimony of the doctor provides a good starting place for determination of whether the JCC's conclusion is supported by the record.
Dr. Reddy gave the following testimony:
Q. Okay. Was there some particular event or incident that necessitated the surgical procedure that you performed, the hernia repair?
A. Okay. First he had a preexisting hernia. And basically anyone who's in fairly good health who has a hernia should have it repaired. I think that's pretty much current surgical thinking unless they have enough complications to make the complications and risks worse than the natural expectation of the disease.
In his altercation, the hernia was made worse. He had more pain, more tenderness, more discomfort, increased pain on coughing, so he was having lots of symptoms associated with the hernia which could be corrected by hernia repair.
Q. Okay. Do you know whether or not he was having those symptoms prior to this incident that occurred in July?

*663 A. I have no idea to what extent he was having those symptoms before July. He didn't relate to me, but he did state that the symptoms were all made worse.
Q. Okay. So he was apparently living with the hernia prior to the incident 
A. Yes.
Q.  without any pain or discomfort?
A. That I really can't answer.
Q. Okay. What can you tell us about whether or not the hernia is a permanent injury or a permanent situation?
A. A hernia is a defect in a tissue we call fascia. When they occur, they never correct themselves. The only hope for correction is a surgical correction.
* * * * * *
Q. Okay. Was Mr. Delgado's preexisting hernia condition aggravated by this incident in July?
A. Yes. That's the first history he gave me.
Q. And your surgery and the hospital bill incident thereto was necessitated by you having to repair the surgery 
A. Yes.
Q.  because it was aggravated?
A. True.
Q. Repair the hernia because it was aggravated?
A. Yes.
* * * * * *
Q. Okay. And here he indicates [in a 1987 hospital record] that he was having some pain and some problem with his right testicle.
Is there any distinction between these reports in 1987 and your diagnosis in 1989? Did you notice anything more severe?
A. No. The only thing that stuck out right off the bat was that they mentioned right testicle and he has a left inguinal hernia. I think that probably just represents the fact that somebody made a slight mistake there, but I would easily say the point being that he had a scrotal hernia which is the same thing that he had when I saw him almost two years later.
* * * * * *
Q. Is there any way that you would be able to tell that his condition was actually made worse due to the workers' compensation claim situation, that altercation? Is there any way that you could say that that was actually worse than it was as described by the claimant in 1987?
A. I have nothing objective by which to compare.
Q. Okay.
A. Only the subjective findings that the patient described it as being worse.
* * * * * *
Q. Okay. Once again, you're relying, then, completely on the patient's statement regarding his history?
A. Absolutely.
Q. There was nothing physical that you saw that you could point your finger to and say `This caused some additional problem' outside of relying on him wholly?
A. Exactly.
* * * * * *
Q. And even though that's a subjective complaint rather than something objective, it was your feeling that surgery was required as a result of that increased pain?
A. Yes.
A medical record from Tampa General Hospital dated September 6, 1987, two years before the incident, notes, "Pt. relates he had a small inguinal hernia but now it has become very lg. and fallen into R. testicle. Unable to amb. C/O pain at site. Able to push back up, soft."[2] Dr. Reddy reviewed this record during the course of his testimony quoted above and noted that the preexisting hernia should *664 have been repaired, since a hernia will never correct itself.
The JCC also had before him lay testimony concerning the severity of Mr. Delgado's hernia prior to the incident on July 5, 1989. The JCC expressly found such testimony to be credible. This evidence indicated that Mr. Delgado was unable to stay on his feet for long because of the protruding hernia and "this happened all the time." He was taken to the hospital in 1987, as documented by the medical record quoted above. According to the family members who took him to the hospital, Delgado was advised then to go to a county clinic to have the hernia operation. Mr. Delgado stated at that time that he had a lot of pain, but when he actually got to the clinic he "just backed out." One lay witness observed that Mr. Delgado was "always complaining about the hernia" before the July 5, 1989 incident.
Viewed alone, Dr. Reddy's testimony is susceptible of two interpretations. The majority concludes that the doctor's testimony supports only a conclusion that the hernia repair was necessitated by the on-the-job incident. Indeed, portions of Dr. Reddy's testimony seem to indicate that the operation was linked to an aggravation of the injury. Other portions of the same testimony, however, indicate that the operation was needed before the incident. As Judge Ervin has observed for this court, the JCC has the duty to unravel a "paradoxical conflict" in a doctor's testimony. Smith v. Crane Cams, Inc., 418 So.2d 1266, 1271 (Fla. 1st DCA 1982). The testimony of the lay witnesses, viewed in conjunction with the medical record in 1987, is evidence of the severity of the preexisting hernia condition. Utilizing the lay testimony and the earlier medical record, the JCC chose to accept as more credible that portion of Dr. Reddy's testimony indicating that Mr. Delgado required surgical intervention, irrespective of the industrial accident. The ambiguities in the doctor's testimony as to whether the same surgical treatment was required before the incident were properly resolved by the judge. See Rinker Materials Corp. v. Hill, 469 So.2d 233, 235 (Fla. 1st DCA 1985) (where doctor's testimony was "not a model of clarity, it was the deputy's function as fact finder to resolve the obvious ambiguities revealed through cross examination").[3]
The decision of the majority looks only to those excerpts from Dr. Reddy's testimony in which the doctor opines that the surgery was related to an aggravation, discounting the evidence that a hernia operation was required before the incident, and that Mr. Delgado was in great pain as a result of this hernia long before the incident. Dr. Reddy confirmed that his testimony as to aggravation relied "completely" upon Mr. Delgado's statement of history. I conclude that the JCC had before him, however, other evidence of Mr. Delgado's history, and that the JCC properly chose to accept that evidence. In workers' compensation cases, the judge's findings must be sustained if permitted by any view of the evidence and its permissible inferences. Orange City Water Co. v. Barkley, 432 So.2d 698 (Fla. 1st DCA 1983). In this case the judge's decision to afford more weight to the evidence and inferences indicating that Mr. Delgado's condition (and the need for surgery) did not result from on-the-job injury was properly based upon the documentary evidence, and upon the judge's determination of credibility of witnesses, including the claimant. Calleyro v. Mt. Sinai Hospital, 504 So.2d 1336 (Fla. 1st DCA), rev. denied, 513 So.2d 1062 (Fla. 1987); McCandless v. M.M. Parrish Constr., 449 So.2d 830 (Fla. 1st DCA 1984).
The majority deals with the JCC's resolution of the conflicting evidence and inferences by noting, in an almost offhand fashion, that Delgado's prior complaints, and his 1987 hospital visit, at which time he was informed of the need for hernia surgery, *665 "is not that kind of competent, substantial evidence essential to support a finding to the contrary." Slip. Op. 4. This assertion, without citation of authority, is most troubling. Nothing is more fundamental to our system of jurisprudence than the proposition that a party affirmatively seeking recovery carries the burden of proof in a proceeding. The majority seems to suggest that in this case the defense had the burden of disproving favorable inferences suggested by the claimant's evidence. This court does not have the authority, nor should it, to enact a rule of law supportive of the view of the evidence adopted by the majority.
I would affirm the JCC's conclusion that the hernia surgery and period of temporary total disability while claimant was recuperating from such surgery were not caused by the incident in question.
NOTES
[1] Section 440.15(5)(a), Florida Statutes (1989), precludes apportionment of medical and temporary disability benefits.
[2] "`Disability' means incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury." § 440.02(10), Fla. Stat. (1989). Disability is not simply an employee's diminution of his or her wage-earning capacity, but an incapacity to carry on, in any field of endeavor, work which will equal or surpass income earned at the time of the injury. City of Hialeah v. Warner, 128 So.2d 611 (Fla. 1961).
[1] While I conclude, upon a review of the record, that the JCC's findings that the hernia condition was "no worse," and that the same surgery was already needed and was thus not the result of any aggravation are both correct, it is only necessary that the second finding be supported by competent substantial evidence, in order to require us to affirm. Even where a JCC makes findings unsupported by the record, an order will be affirmed where such erroneous findings of fact included in the order are immaterial and unnecessary to the decision. Crime Control, Inc. v. Burston, 522 So.2d 929 (Fla. 1st DCA 1988).
[2] All medical records in this hearing, including this particular record from Tampa General, were placed in evidence by stipulation of both sides. The weight to be given to this exhibit, which suggested that claimant was unable to walk, much less to work, was for the judge, and not for the reviewing court. Magic City Bottle & Supply Co. v. Robinson, 116 So.2d 240, 243 (Fla. 1959).
[3] Even the competing inference contained within Dr. Reddy's testimony, i.e., that the surgery was necessitated only by the aggravation, could have been rejected by the JCC since "it is well established that a finder of fact is not required to accept an opinion which is not supported by the facts of record." Mallon v. Florida Rock Industries, Inc., 568 So.2d 503, 504 (Fla. 1st DCA 1990).