642 So.2d 94 (1994)
HOLIDAY FOLIAGE and Crawford and Company, Inc., Appellants,
v.
Emanuel ANDERSON, Appellee.
No. 93-1598.
District Court of Appeal of Florida, First District.
September 7, 1994.
*96 Brian B. Bolton, of Langston, Hess and Bolton, P.A., Maitland, for appellants.
Douglas H. Glicken, of Douglas H. Glicken, P.A., Orlando, for appellee.
JOANOS, Judge.
The employer and servicing agent (e/sa) appeal an order of the Judge of Compensation Claims (JCC), awarding the claimant temporary total disability benefits, medical treatment, attorney's fees, costs, and interest. The issues are whether there is competent substantial evidence to support the JCC's findings that claimant sustained an aggravation of a pre-existing condition, and whether claimant is temporarily totally disabled as a result of the aggravation. We affirm in part and reverse in part.
The record reflects that in July 1989, claimant's right foot was severely injured in an automobile accident. The medical records and claimant's undisputed testimony establish that he received treatment for his right foot for approximately six months, then was released with no restrictions. In May 1991, claimant obtained a job as a metal press operator, an occupation which required him to stand during the work day. In July 1991, claimant left the metal press job and began employment with Holiday Foliage, the employer in this case. Claimant worked a 45-hour work week; his duties included mowing, rototilling with a walk tiller, and carrying boxes weighing fifty pounds. Claimant performed these tasks adequately, and took no time off from work.
On October 7, 1991, while stretching a canopy across sheds, claimant's right foot went into a hole. The incident occurred at the end of the work day, and was witnessed by three employees who helped claimant remove his foot. Claimant testified that his ankle "snapped," and that he felt immediate pain. The e/sa provided claimant with medical treatment until December 18, 1991, and paid temporary total disability benefits until January 20, 1992.
Claimant was incarcerated from November 15, 1991, until December 16, 1991, and from January 15, 1992, until October 7, 1992. On November 10, 1992, claimant filed a claim for the benefits here under review. The hearing on the claim was conducted February 19, 1993.
The medical evidence established that the industrial accident resulted in an acute exacerbation of claimant's 1989 right foot condition. Claimant's treating physician, and an orthopedic surgeon who saw claimant once for an examination, recommended surgery for claimant's right foot. On November 26, 1991, e/sa authorized surgery, but cancelled the surgery on December 18, 1991. Subsequently, e/sa concluded claimant's need for medical treatment and disability related to the 1989 injury, and terminated further medical care and disability benefits to claimant.
Claimant's treating physician placed him on temporary total disability (TTD) status on October 17, 1991. The doctor continued claimant's TTD status on December 18, 1991, the date he last examined the claimant. The e/sa sent a rehabilitation nurse to consult the treating physician concerning whether claimant's condition was attributable to his 1989 automobile accident, or to the 1991 compensable injury. The treating physician stated that claimant's problems were related "almost entirely to his injury in 1989." In his 1993 deposition, the doctor stated that unless claimant's condition had been followed medically from the date of the 1989 injury on, it would be impossible to determine objectively whether the 1991 industrial accident made his condition worse. Since claimant received no treatment for his right foot from 1989 until the new injury in 1991, such determination had to be made based on what the patient said.
The JCC found that claimant was entitled to continuing medical care and indemnity benefits as a result of the 1991 industrial *97 accident, based on claimant's testimony regarding the condition of his foot prior to the industrial accident, and his increased symptomatology since the accident. The JCC awarded TTD benefits from January 21, 1992, to continue for so long as claimant remained TTD, and authorized medical treatment and surgery for claimant's right foot condition.
The evidence in this case is conflicting with respect to the compensability of the claim, and the degree of claimant's continuing disability. Such circumstances highlight the deference due a JCC's fact finding. The reviewing court is bound by the JCC's conclusions, even though the court may have reached a different conclusion based on the same evidence, unless the findings lack any substantial support in the record. Chicken `N' Things v. Murray, 329 So.2d 302, 306 (Fla. 1976); Rinker Materials Corporation v. Hill, 471 So.2d 119, 120 (Fla. 1st DCA 1985). In this vein, where the evidence is sufficient to support the JCC's interpretation of a physician's testimony, the decision will be affirmed, notwithstanding that the reviewing court could or would have viewed the evidence differently. Gomez v. Neckwear, 424 So.2d 106, 107 (Fla. 1st DCA 1982). Where the medical testimony and evidence is conflicting and paradoxical, it is the JCC's duty to resolve the conflict. Grillo v. Big "B" Ranch, 328 So.2d 429 (Fla. 1976).
In this regard, the JCC should consider and evaluate both lay and medical evidence, and in a proper case, may give greater weight to physical evidence and lay testimony than is accorded to the scientific opinions of the experts. When the JCC relies on one as against the other, he should state reasons for doing so. Jeffers v. Pan American Envelope Co., 172 So.2d 577, 578 (Fla. 1965). In a proper case, the JCC can rely upon lay testimony, even if it directly conflicts with medical testimony. McCandless v. M.M. Parrish Construction, 449 So.2d 830, 833 (Fla. 1st DCA 1984). See also H & A Frank's Construction v. Mendoza, 582 So.2d 780, 782 (Fla. 1st DCA 1991). Specifically, the JCC, not a doctor, "is the finder and adjudicator of facts, including medical facts, subject only to specific statutory requirements for the evidentiary predicate for certain determinations." Tampa Bay Moving Systems, Inc. v. Frederick, 433 So.2d 628, 630 (Fla. 1st DCA 1983).
Moreover, the reasonable medical probability necessary to establish a causal relationship between accident and disability may be established by medical or lay testimony. That is, lay testimony can establish the necessary relationship as to conditions and symptoms within the sensory experience and actual knowledge of the claimant, but it is insufficient as to conditions which are not readily observable, such as blood pressure and soft tissue injuries. Peters v. Armellini Express Lines, 527 So.2d 266, 269 (Fla. 1st DCA 1988); Osceola County Commissioners v. Hand, 458 So.2d 1134, 1135 (Fla. 1st DCA 1984); Decks, Inc. v. Wright, 389 So.2d 1074, 1076 (Fla. 1st DCA 1980). See also Teleflex, Inc. v. Arndts, 499 So.2d 45, 46 (Fla. 1st DCA 1986).
In the instant case, ambiguous and conflicting medical evidence was introduced with respect to a causal relationship between claimant's present need for medical treatment and the 1991 industrial injury. In Delgado v. Blanco & Sons Catering, 606 So.2d 658 (Fla. 1st DCA 1992), on similar facts, this court reversed the JCC's finding that Delgado's condition was no worse following a work altercation than it had been before, and that the surgery was not the result of the altercation. As has the claimant in this case, Delgado had a pre-existing condition for which surgery had been recommended, but the pre-existing condition did not interfere with Delgado's ability to perform all job duties on a full time basis. In Delgado, as here, the treating physician acknowledged there was no objective way to determine whether the claimant's condition was made worse by the subsequent industrial injury "except by the history given to him by claimant." 606 So.2d at 659. The court found that Delgado's earlier need for hernia repair did not refute the history the claimant gave to the doctor.
Here, the JCC's finding that claimant's current medical condition is causally related to the industrial injury is supported by a combination of medical and lay testimony. *98 The treating physician testified that the industrial accident caused an acute exacerbation of claimant's foot problem; claimant testified that his foot causes him pain and difficulty in ambulation that he did not experience before the 1991 industrial injury. Claimant's testimony was corroborated implicitly by evidence that claimant worked a 45-hour work week, and that ninety percent of his duties involved walking, standing, and carrying 50-pound boxes. In addition, it appears that claimant's foot problems fall within the frame of matters within the sensory experience and actual knowledge of the claimant. Although the medical evidence indicates that a poorly healed break is the cause underlying claimant's foot problems, the treating physician's testimony indicates that the problems are clearly visible.
We conclude the JCC's findings that claimant sustained an aggravation of his pre-existing condition is supported by competent substantial evidence, and is in accord with the JCC's function as fact finder to resolve conflicts and ambiguities in the evidence. Therefore, we affirm the determination that the aggravation of claimant's pre-existing condition is compensable.
The second issue concerns the propriety of the award of temporary total disability benefits from January 21, 1992, to date of the hearing and continuing for so long as claimant remains temporarily totally disabled. Entitlement to temporary total disability benefits may be shown by medical testimony that a claimant is unable to work, or by evidence of a good faith, albeit unsuccessful, work search. State v. Vice, 601 So.2d 1294, 1295 (Fla. 1st DCA 1992); Citrus County Human Services v. Cross, 485 So.2d 874, 875 (Fla. 1st DCA 1986); Citrus Central, Inc. v. Gardner, 466 So.2d 369, 371 (Fla. 1st DCA 1985). In those cases where a work search is indicated, temporary total disability benefits cannot be denied for failure to search for work where the evidence shows that claimant neither knew nor could have known that he was medically released to return to work. Charles v. Suwannee Swifty, 622 So.2d 114 (Fla. 1st DCA 1993); Davis v. Phillips & Jordan, 483 So.2d 534, 536 (Fla. 1st DCA 1986). Although compensation benefits are not payable to the claimant during the periods he or she is an inmate of a public institution, such compensation may be payable to those persons dependent upon the claimant for support.[1]
In this case, on December 18, 1991, the treating physician determined that claimant was temporarily totally disabled, and signed a form to that effect. It is undisputed that claimant was not released to work by either the treating physician or the examining physician. In his 1993 deposition, the treating physician stated that he meant only that claimant could not return to his former job duties of farm labor. However, neither this subsequent clarification nor the physician's seeming conclusion that claimant reached maximum medical improvement (MMI) as of January 14, 1992, was communicated to the claimant. Moreover, when the MMI determination was made, the physician had not seen claimant since December 18, 1991, when he rated claimant as temporarily totally disabled.
With regard to claimant's work search obligation, a claims adjuster testified she sent claimant a wage loss letter and forms, advising him of his responsibility to look for work. The letter was mailed to the wrong address, and claimant's testimony that he did not receive the letter was unrefuted. While e/sa introduced a return receipt for the employer's letter advising claimant that employment was available for him, this letter also was misaddressed, and the return receipt was signed by someone other than claimant or his mother.
The record in this case contains competent substantial evidence which would support a *99 finding that claimant received constructive notice of his duty to perform a job search and that employment was available for him. By the same token, it contains competent substantial evidence to support the JCC's finding that claimant was never informed that he was released to return to work. Since we are bound by the JCC's findings when supported by competent substantial evidence, we affirm the award of temporary total disability benefits in part. The record indicates that claimant was incarcerated for part of the time for which benefits were awarded, and further indicates that claimant is the divorced father of two children for whom he has been ordered to provide support. Although claimant is not entitled to receive compensation benefits for the periods of his incarceration, any compensation due for that period is payable to his dependents. § 440.15(8), Fla. Stat. (1991).
Accordingly, the order is affirmed with respect to the finding that claimant sustained a compensable aggravation of a pre-existing condition, and with respect to the award of medical treatment and surgery. The award of temporary total disability benefits is reversed, insofar as it encompasses the periods of claimant's incarceration, and is remanded for a determination whether there are persons dependent upon claimant for support, pursuant to section 440.15(8), Florida Statutes. If so, the award of temporary total disability benefits should be modified to reflect that compensation benefits due during claimant's incarceration are to be paid to his dependents.
Reversed and remanded for further proceedings.
LAWRENCE and DAVIS, JJ., concur.
NOTES
[1] Section 440.15(8), Florida Statutes (1991), provides:

In case an employee becomes an inmate of a public institution, then no compensation shall be payable unless he has dependent upon him for support a person or persons defined as dependents elsewhere in this chapter, whose dependency shall be determined as if the employee were deceased and to whom compensation would be paid in case of death; and such compensation as is due such employee shall be paid such dependents during the time he remains such inmate.