PER CURIAM.
ABC Liquors, Inc., and United Self Insured Services appeal an order of the judge of compensation claims denying their petition for modification of an order which awarded medical benefits (attendant care) to Evelyn Aeree, a workers’ compensation claimant. No. 96-2212. Appellants — Ms. Acree’s employer some two decades ago and her former employer’s servicing agent — contend that the judge of compensation claims erred in excluding evidence proffered to show that Ms. Aeree was able to perform the activities of daily living without attendant care. In No. 96-2212, we reverse and remand for consideration of the proffered evidence at a new hearing. We also reverse the award of attorney’s fees' appealed separately in No. 96-2291. On appeal, the cases have been consolidated.[1]
Recently clarifying the scope of section 440.09(4), Florida Statutes (1995), we left undiminished the JCC’s responsibility to decide — if necessary to determine entitlement to benefits — whether a claimant is malingering. Horizons Painting v. Lessard, 688 So.2d 941 (Fla. 1st DCA 1997)(holding that, while collateral determinations of fraud must be made in another forum, the judge of compensation claims retains the fact-finder’s traditional role in resolving credibility issues); E.H. v. Temporary Labor Source, Inc., 687 So.2d 884 (Fla. 1st DCA 1997)(holding inability to make a section 440.09(4) determination does not affect the ability of the judge of compensation claims to decide a claimant’s credibility).

Need for Attendant Care Disputed

Ms. Aeree was injured in industrial accidents in 1973. Fifteen years later, after a third laminectomy (with screw fixation), she continued to report intractable pain which nerve blocks did not alleviate. In 1993, a morphine pump was implanted in her back. Appellants maintain that she has since improved sufficiently so that her need for attendant care has been reduced or eliminated. They alleged below that her improved mobility allowed Ms. Aeree to cook for herself, do laundry, dress herself, put on makeup and nail polish, drive a car, and take her own medication, among other things.[2]
The evidence on which the JCC based his order denying the petition for modification included live testimony from Ms. Aeree and Dr. Fred Cohen, and depositions and medical records from Dr. John Barsa and Dr. Remi-gio Palumbo, a cardiologist. Drs. Cohen and Barsa are algologists, physicians who specialize in pain management. Ms. Aeree testified that she “need[ed] assistance with just about everything,” specifically, that she needed assistance with walking, bathing, cooking, washing dishes, dressing, clipping and painting her nails, combing her hair, applying makeup, driving, and shopping.
Medical testimony conflicted. Based on his review of her medical records, Dr. Cohen testified that he did not think Ms. Aeree needed attendant care at all, but that, in any event, no more than two hours a day would be required. Dr. Palumbo testified that Ms. Aeree needed six to eight hours of attendant care a day seven days a week. He said that, even if he knew that she could consistently perform activities of daily living, he would not change his opinion “on the basis of what I see in this patient by examining her.” On cross examination, however, Dr. Palumbo deferred to Dr. Barsa as to the level of attendant care Ms. Aeree needed.
*815 Dr. Barsa testified (on deposition) that he could not say whether Ms. Aeree still needed twelve hours of attendant care a day, the amount appellants were required to provide at the time the hearing took place.[3] Asked if knowledge that Ms. Aeree could cook, do laundry, and dress herself on a consistent basis for weeks at a time would affect his opinion as to the amount of attendant care she needed, Dr. Barsa answered:
[I]f she can go on for three months cook every day and drive every day and bathe herself every day and don’t need any help whatsoever and you have documentation with that, obviously, I think a blooming idiot, not a doctor, to say, no, you don’t need attendant care, but we’re talking about a patient that has some pain, she may have good days and bad days ... I cannot be — unless I have — see some data.
If you’re going to make me assume and go through that, you have to be very specific. Don’t say week, weeks or months or two months. Give me some dates, give me some numbers, so that ... I can give you some answer....
Dr. Barsa said that if Ms. Aeree could put her hose on and take them off daily for three months, apply her own makeup regularly for an extended period, and actively baby-sit for her grandchildren for at least nine months after the morphine pump was in place (taking the children out to dinner, to watch baseball games, and otherwise being “active” with them), he would change his medical opinion regarding the need for attendant care: He would request another evaluation,[4] and “obviously” he would request less than twelve hours.
When asked to assume that the person allegedly providing Ms. Aeree attendant care from February to April 1993 was actually in the hospital dying at the time, and that Ms. Aeree could and did perform activities of daily living for herself during this time period, Dr. Barsa agreed that these assumptions would change his opinion as to the need for attendant care. Asked to assume that another alleged caregiver was not even living in the same city as Ms. Aeree, when he allegedly provided attendant care from July through December of 1993, and that Ms. Aeree was able to and did perform activities of daily living for herself during this time period, Dr. Barsa replied (over claimant’s objection that the question assumed facts not in evidence) that such hypothetical facts would change his opinion as to the medical necessity of eight to twelve hours of attendant care.

Proffered Evidence Excluded

Before the hearing began, the judge and counsel adverted to an earlier oral ruling concerning evidence offered only to prove misrepresentation, concealment, and fraud, but this ruling was not reduced to -writing and no transcript of the ruling is part of the record. At hearing, appellants proffered witnesses who they said would testify to facts like those on which the hypothetical questions put to Dr. Barsa were predicated.[5] But the judge ruled:
*816 Now, it can be argued that ... .well, you need to know that the claimant said that she couldn’t do so and so and we have witnesses that says (sic) that she can do so and so. Suppose we take one of those ... .that the claimant says: “I can’t get up and get my own medicine.” And then that’s proved to be absolutely false. What would I do with that information? I couldn’t make a decision based on it other than to say go tell it to the doctor.... And you might say, well, how do we know what she needs if she’s a liar or if the people that work for her are liars or there’s a lot of fraud going on .... how do we know what she needs. Tell it to the doctors and let the doctor tell me what is needed relative to attendant care. Because the only alternative is for us to bog ourselves down here for hours and hours and possibly days trying a fraud case.
Perhaps the prehearing ruling was intended to exclude consideration of collateral matters concerning misrepresentation, concealment, and fraud that did not lead to an adjudication in another forum. See Lessard; Temporary Labor. But it is clear that a party may seek modification of an order entered by a judge of compensation claims on grounds that the order was procured by fraud. Oakdell, Inc. v. Gallardo, 505 So.2d 672, 674-675 (Fla. 1st DCA 1987). To the extent the judge of compensation claims ruled otherwise, we are obliged to reverse.

Issue for Judge of Compensation Claims

The exclusion of evidence relevant to the claimant’s condition at the time of hearing or to her. credibility, simply because it also tended to prove fraud, was error. The judge of compensation claims was faced with a conflict in the evidence concerning the claimant’s need for attendant care, which required him to determine her credibility. The judge’s apparent ruling that medical professionals have exclusive responsibility to decide a claimant’s credibility was clear error. Holiday Foliage v. Anderson, 642 So.2d 94 (Fla. 1st DCA 1994); Tampa Bay Moving Sys., Inc. v. Frederick, 433 So.2d 628, 630 (Fla. 1st DCA 1983)(holding that the judge of compensation claims, not a doctor, “is finder and adjudicator of facts, including medical facts”). Credibility issues are for the judge of compensation claims to resolve as the trier of fact. Mallon v. Florida Rock Indus., Inc., 568 So.2d 503, 504 (Fla. 1st DCA 1990)(hold-ing that the judge of compensation claims was not required to accept an opinion not supported by the facts of record); Arkin Constr. Co. v. Simpkins, 99 So.2d 557 (Fla.1957)(holding that deputy commissioner can reject uncontradicted expert testimony where expert’s opinion is based on assumptions not supported by the evidence). Dr. Barsa’s responses to questions, based on purported facts that appellants offered to prove, demonstrated that the proffered evidence would have been pertinent on issues the judge of compensation claims had to decide.
Although expert testimony is required to show that attendant care is “medically necessary,” § 440.13(2)(b), Fla. Stat. (1995), see Smith v. DRW Realty Servs., 569 So.2d 462, 464 n. 1 (Fla. 1st DCA 1990)(dis-cussing predecessor provisions), such opinion testimony rests on a factual predicate. Cf. Ate Fixture Fab v. Wagner, 559 So.2d 635 (Fla. 1st DCA 1990). For that reason, lay testimony can prove dispositive on entitle *817 ment to medical benefits, in an appropriate case. State, Fla. Div. of Risk Management v. Martin, 690 So.2d 651 (Fla. 1st DCA 1997)(relianee upon expert opinion based upon “an inaccurate factual history” unjustified); Ullman v. City of Tampa Parks Dep’t, 625 So.2d 868 (Fla. 1st DCA 1993)(holding that JCC may reject medical testimony if the JCC finds worker gave untruthful history). Cf. Easkold, v. Rhodes, 614 So.2d 495, 498 (Fla.1993)(holding that jury can reject uncon-tradieted medical testimony undermined by claimant’s untruthful history). Both sides’ relevant evidence — lay as well as expert— must be considered, if otherwise admissible.
Accordingly, we reverse and remand for further proceedings in which evidence of Ms. Acree’s ability to perform activities of daily living and — to the extent they bear on her present condition or credibility — her alleged misrepresentations regarding her prior utilization of attendant care benefits is allowed. Because we overturn the order denying the petition for modification, we also reverse the award of attorney’s fees. In case the question of fees recurs on remand, we point out that section 440.34, Florida Statutes (1973), would govern any award, and that this version of the statute does not contain statutory “guidelines.” See Lee Eng’g & Constr. Co. v. Fellows, 209 So.2d 454 (Fla.1968). In the event fees are awarded on remand, the judge of compensation claims should take care not to predicate any portion of the award on legal work for which appellants have already reimbursed claimant or paid her counsel.
Reversed and remanded.
BARFIELD, C.J., and DAVIS and BENTON, JJ., concur.

. While we omit a detailed discussion of the convoluted history of this case, we explicitly reject Ms. Acree's contention that the procedural posture of the case forecloses consideration of appellants’ arguments.

. The petition for modification alleged that the caregiver attending Ms. Aeree had a daytime job and slept during the time he was paid to assist Ms. Aeree, that recently discovered evidence established that Ms. Aeree did not need attendant care, that she intentionally concealed material facts regarding her need for such care, and that the stipulated order of January 27, 1993, was based on a mistake of fact. The petition further alleged that appellants had discovered that they had been paying for attendant care services which were not being provided to Ms. Aeree and requested reimbursement of payments for attendant care never rendered.

. He testified,
[Ill’s not my job or duty to really be specific about the number of hours that Ms. Aeree needs.
[[Image here]]
... I have requested over and over from the insurance carrier that they should provide her with somebody to go to the home and assess the need for attendant care and the specific term of quality, the number of hours, etcetera.
Dr. Barsa agreed that his past medical opinion as to both eight and twelve hours of attendant care was based on a rough estimate.

. Dr. Barsa based his January 4, 1993 recommendation for six to eight hours of attendant care on an evaluation made by a registered nurse who reviewed medical records, interviewed Ms. Aeree, and visited her in her Bartow home. On remand, another comprehensive evaluation of Ms. Acree’s needs and abilities by a rehabilitation specialist who visits her home, interviews her, and reviews her medical records (and pertinent physicians' depositions) may be in order.

.Appellants represented that:
—Ms. Acree’s nephew would have testified that he did not sign the attendant care affidavits bearing his name which Ms. Aeree submitted for July 15, 1993-December 31, 1993, that he did not provide attendant care to Ms. Aeree at any time during 1993, and that he did not live with her or even in the same county that she did the entire year.
—One of Ms. Acree’s daughters would have testified that Ms. Aeree performed activities of daily living since 1993, including, but not limited to, dressing, driving, applying make-up, bathing, *816 combing her hair, and painting her nails; and that Ms. Aeree lived with her daughter in Dade City from August 1994 through November 1994, contrary to the attendant care affidavits and Ms. Acree’s testimony. This daughter would have testified, inter alia, that one caregiver did not provide the stated number of hours of attendant care from February to April 1993 (that caregiver herself being bedridden during this time, Ms. Aeree caring for her, and said caregiver dying in April 1993). The daughter would have further testified that yet another caregiver did not provide either eight or twelve hours of attendant care from January 1994 until April 1995 (dates of attendant care affidavits he purportedly signed and which Ms. Aeree submitted); and that another caregiver did not provide care in 1995 and was in fact receiving workers' compensation himself in that year. The daughter would also have testified that Ms. Aeree repeatedly drove to Bartow (her residence), Quincy (son's home), Brandon (doctor's office), Dade City (daughter’s home) and to Winter Park (deposition) and Lake-land (deposition). The daughter would also have testified that a second daughter did not assist Ms. Aeree with activities of daily living, since Ms. Aeree did these activities on her own.
—Nurses would have testified that they repeatedly witnessed Ms. Aeree driving to Dr. Bar-sa's office in Brandon between 1993-1995.