THOMPSON, Judge.
The employer/carrier (EC) appeal a workers’ compensation order' which found that the claimant’s 1987 fall and injury were caused by residual leg problems from claimant’s 1983 compensable injury, and awarded medical benefits, costs and attorney’s fees. We agree with the EC that claimant failed to sustain his initial burden of proving that a causal connection exists *163 between the 1983 injury and the 1987 fall, and we reverse the award.
Claimant is a 33-year-old man employed by the EC in 1983 as a laborer. On July 6, 1983, claimant injured his low back in an accident accepted as compensable. On September 18, 1986, claimant and the EC entered into a wash out agreement in settlement of all compensation, rehabilitation, and medical benefit claims arising from the 1983 injury. Claimant apparently underwent a lumbar laminectomy as a result of his 1983 injury, but no medical records relating to the treatment of this injury are included in the record. Claimant never returned to work for the employer.
In July 1987 claimant fell while standing on the bumper of a pickup truck and reaching for a fishing rod. He struck his back but was not aware of any result until approximately one month later when he noticed a lack of feeling in his right leg. He ultimately underwent an anterior cervical diskectomy and fusion of C4-5 on November 23, 1987. On March 25, 1988, he filed a claim for payment of his outstanding medical bills, attorney’s fees and costs. The matter proceeded to final hearing at which claimant testified that following his July 1983 accident he suffered low back and leg pain. He ultimately underwent surgery for a herniated disc in his low back. He recovered fairly well but could not find another job. At some point he tried to go back to college, but was unable to continue due to continuing back pain and his doctor told him to stop attending class. Claimant testified that between 1983 and 1987 his only continuing problem was that his leg would periodically give out. This occurred five or six times during the period. Following his July 1987 fall and his realization that he had sustained an injury as a result, he unsuccessfully sought medical care from two authorized physicians. Claimant then saw Dr. Tweed, a neurosurgeon, and Dr. Derbenwick, a neurologist, neither of whom were authorized by the EC.
Dr. Tweed testified by deposition he first saw claimant in the emergency room November 18, 1987, and diagnosed a “large” herniated pulposus at C4-5 with cervical myelopathy and Brown-Sequard syndrome. He was very concerned with the possibility of complete paralysis and felt prompt surgery was indicated. Dr. Tweed stated he conferred with Dr. Derbenwick, but that he relied primarily on the history provided by claimant. When asked how claimant described the onset of his symptoms, Dr. Tweed stated, “When he climbed off of a truck. And he stated that when he climbed off the truck he hit the pavement and his legs gave way and he then fell to the ground.” Claimant gave no history or detail of leg problems or giving way, “Just his legs gave way and that’s when he fell to the ground. He attempted to steady himself and his neck went back at the same time.” A few weeks later claimant noticed loss of sensation in his right leg. Dr. Tweed’s discharge summary for claimant’s November 1987 hospitalization and surgery states at claimant’s history:
[Claimant] had experienced progressive weakness and loss of sensation in the legs and left arm since having fallen off a truck in July of 1987. He at first experienced weakness of the left lower extremity after losing sensation in the left lower extremity in July, and then progressed on to loss of function of the left upper extremity in September.
The admission summary for the same hospitalization states:
[Claimant] is being admitted on an urgent basis because of progressive weakness and loss of sensation in his legs and his left arm. He presents with a history of having fallen off his truck in July, the first week of July in particular, 1987 approximately 4 months ago. Approximately 1-2 weeks later he began to experience loss of sensation in the right leg_ In August he began to experience progressive weakness of the left lower extremity, left lower extremity becoming weaker and having more difficulty using it and also more difficulty walking.
In a January 15, 1988, letter to claimant’s attorney, Tweed stated:
It is my opinion that this patient’s symptoms which consist of a spinal cord in *164 volvement or myelopathy at C4-5 level was directly related to a herniated nucleus pulposus or disc herniation of at this level. It is the further opinion by the undersigned that the disc occurred at the time of the accident that the patient incurred during the first week of July, 1987.
Dr. Derbenwick, who saw claimant one time in October 1988, stated in a letter to the referring health department:
The history was obtained from the patient who stated that he fell off the back of his truck in July and struck his back with no pain. One week later while swimming in the cold springs he realized that he could not feel the cold water on his right leg and cut himself and did not know that he had done so. In August he developed dragging of his left leg that was noticeable if he tried to walk fast. In early September he began to lose control of his left hand with a mild ache in his upper left forearm at times.
In 1983 he had a workmen’s comp injury, and in 1985 he had surgery for left leg problems that resolved completely with that surgery.
The judge found that claimant’s July 1987 fall was caused by residual leg problems along with pain and numbness from his previous industrial injury that occurred in 1983, and that, “There was no evidence presented to show that the claimant’s fall was caused by any other reason other than the residuals from the [1983] injuries.” The EC was ordered to provide the medical benefits claimed, costs and an attorney’s fee. This appeal followed. The EC argues no competent substantial evidence supports the judge’s determination that claimant’s compensable 1983 injury caused claimant’s 1987 fall and injuries. We agree.
The only evidence of a causal connection is claimant’s testimony that following his 1983 accident his leg would periodically give way. No medical evidence establishes a causal connection between the 1983 injury and the 1987 fall. The only causal connection evidence adduced was Dr. Tweed’s opinion that claimant’s cervical problems were directly related to his 1987 fall. All the medical evidence adduced indicates any leg problems occurred after, not before, the 1987 fall. Therefore, claimant’s testimony that continuing leg problems predated his 1987 fall is contradicted and unsupported by all the medical evidence. Further, the 1987 fall injured claimant’s cervical spine. The 1983 accident involved an injury to his lumbar spine.
The well-established rule that every natural and direct consequence of a com-pensable injury must likewise be regarded as arising out of the employment and com-pensable was first set forth in Sosenko v. American Airmotive Corp., 156 So.2d 489 (Fla.1963). The threshold inquiry under this test is whether the subsequent injury is related to the primary injury. See also D’Angelo Plastering Co. v. Isaac, 393 So.2d 1066, 1068 (Fla.1981) (“every natural consequence that flows from the initial injury likewise arises out of the employment unless it is the result of an independent intervening cause attributable to claimant’s own negligence or misconduct_”). Therefore, in determining whether a subsequent accident is also compensable the test is twofold: (1) Was the second accident related to the initial, compensable accident, and if so, (2) was there an intervening cause which broke the chain of causation, such as the claimant’s own negligence? The occurrence of a subsequent, noncom-pensable accident does not automatically break the chain of causal connection for all claims, but only for those claims which would not have occurred if the subsequent, noncompensable accident had not happened. Newhouse v. Volusia County School Board, 474 So.2d 1222 (Fla. 1st DCA 1985); Parish v. Baptist Hospital, 512 So.2d 1031 (Fla. 1st DCA 1987). This is particularly true when the effects of the initial accident are still present at the time the subsequent accident occurs. McPherson v. Broward County School Board, 527 So.2d 238 (Fla. 1st DCA 1988); Parish v. Baptist Hospital. Even if the second accident is noncompensable, any benefits properly attributable to the first, compensable accident are still due.
*165 In the instant case no competent substantial evidence exists demonstrating a causal connection between claimant’s 1983 accident and injuries and the 1987 fall. The only evidence that the 1987 fall was the direct, natural result of the 1983 accident was claimant’s testimony that his leg periodically gave way as a result of the 1983 accident. This testimony alone is insufficient under the facts of the instant case because the only medical evidence adduced is to the contrary, and the causation of the 1987 accident is not something that can be established by lay testimony. Vero Beach Care Center v. Ricks, 476 So.2d 262 (Fla. 1st DCA 1985); Handy v. Golden Gem Growers, Inc., 454 So.2d 69 (Fla. 1st DCA 1984); Cintas Corp. v. Price, 424 So.2d 900 (Fla. 1st DCA 1982). Causation is never presumed unless the injury occurs on the job and no evidence of causation exists. Deahl v. Uni-Pak Corp., 550 So.2d 122 (Fla. 1st DCA 1989). Otherwise, the claimant bears the burden of proving a causal connection between the employment and injury. Id. Claimant has failed to prove that his 1987 fall was causally related to the 1983 accident.
[Although lay testimony is of probative value in establishing the sequence of events, actual inability or ability to perform work, pain, and similar factors within the actual knowledge and sensory experience of the claimant, “lay testimony cannot be used to establish causal relationship with reasonable medical probability as to conditions and symptoms not readily observable.” ... Furthermore, this court has held that “[sjoft-tissue injuries, such as lower back difficulties, are not readily observable, and hence are not susceptible to evaluation by lay persons.”
Peters v. Armellini Express Lines, 527 So.2d 266, 269 (Fla. 1st DCA 1988) [citations omitted].
In the instant case, not only is claimant’s lay testimony the sole evidence of causation, it is unsupported and/or contradicted by the meager medical evidence. Compare Morton Plant Hospital, Inc. v. Craft, 547 So.2d 1024 (Fla. 1st DCA 1989), in which causation was sufficiently proven by claimant’s testimony supported by conflicting medical reports. Here the medical evidence is not in conflict and consistently relates claimant’s cervical problems solely to his 1987 fall without reference to his 1983 lumbar injury. Under the circumstances of the instant case causation has not been proven. Claimant has therefore failed to satisfy the first prong of the subsequent accident compensability test by failing to prove the 1987 fall was a direct and natural result of the 1983 injury. We therefore reverse the award of benefits, costs and attorney’s fees.
REVERSED.
JOANOS, J., concurs.
WENTWORTH, J., dissents with opinion.