763 So.2d 377 (2000)
CLOSET MAID and Crawford and Company, Appellants,
v.
Wallace D. SYKES, Appellee.
No. 1D98-660.
District Court of Appeal of Florida, First District.
February 15, 2000.
*379 Mark A. Massey of McConnaughhay, Duffy, Coonrod, Pope & Weaver, P.A., Ocala, for Appellants.
Richard R. Crooke of Chalkley & Crooke, P.A., Ocala, and Bill McCabe of Shepherd, McCabe & Cooley, Longwood, for Appellee.

EN BANC
PER CURIAM.
Closet Maid and its servicing agent, Crawford and Company, appeal a final order awarding indemnity and medical benefits to Wallace D. Sykes, an injured worker. They contend that the judge of compensation claims erred in finding that the workplace accident was the major contributing cause of Mr. Sykes' need for back surgery. To resolve this controversy we must define the major contributing cause requirement and state the applicable standard of proof. We have addressed these issues here, but because the judge of compensation claims did not have the benefit of this opinion or any other controlling precedent, we remand the case for further consideration.
Mr. Sykes was employed by Closet Maid as a warehouseman in the receiving department. As a part of this job, he typically operated a forklift and unloaded heavy items by hand. He was unloading a pallet of boxes on May, 16, 1996, when a box fell and struck him on the head, forcing him down on one knee. Following the accident, Mr. Sykes suffered back and neck pain. Closet Maid and its servicing agent accepted the accident as compensable and agreed to pay temporary disability benefits. They also authorized medical care by Doctor Barry Kaplan, a neurosurgeon.
Medical testing revealed that Mr. Sykes had a pre-existing medical condition known *380 as spinal stenosis. This condition is a form of arthritis of the spinal canal. It is a congenital disease which is also degenerative, in that it usually gets worse with age and deterioration of the spine. In some cases, a traumatic injury to the spine provides the first indication that a person has spinal stenosis. As Dr. Kaplan explained, the "spinal column is compromised by arthritis" and "when the back is wrenched, the nerves that are in the low back can get bruised against the bone spurs."
Until he was injured at work, Mr. Sykes was not aware of the fact that he had spinal stenosis. He was forty-seven years old at the time of the accident and had worked for more than twenty years in manual labor positions, some more physically demanding than his job at Closet Maid. During that time, he had experienced no significant back pain or disability. He had worked for Closet Maid for three and one-half years and, before his injury in the warehouse, he had not missed a day of work.
Dr. Kaplan first recommended a conservative course of treatment including physical therapy and restrictions on lifting. This proved ineffective, however, in that it did not alleviate the pain. Mr. Sykes lost forty-five pounds in an effort to improve his condition but the weight loss also failed to reduce the pain. On January 21, 1997, Dr. Kaplan recommended a lumbar laminectomy surgery. At that point, Dr. Kaplan said that there was little else he could do to ease Mr. Sykes' back pain.
Crawford and Company refused to pay for the surgery Dr. Kaplan recommended. By then Crawford and Company had also stopped paying Mr. Sykes temporary disability payments and had begun to pay him impairment benefits based on a three percent impairment rating. The temporary disability payments ceased on December 31, 1996, after Dr. Kaplan notified Crawford and Company that Mr. Sykes was at maximum medical improvement without the surgery. On April 27, 1997, Mr. Sykes filed a petition for benefits seeking authorization for the surgery and temporary disability benefits from December 31, 1996 through the future date of his maximum medical improvement.
Dr. Kaplan allocated seventy-five percent of Mr. Sykes'"condition," and the resulting impairment, to the pre-existing spinal stenosis, and twenty-five percent to the accident at work. Dr. Kaplan also expressed the view that the pre-existing problem was the "major contributing cause" of the disability and need for medical treatment, and indicated that he felt that Mr. Sykes probably would have needed surgery at some time in the future even had the workplace accident not occurred. But Dr. Kaplan could not say whether surgery would have been required at any time in the near future, and explained that his recommendation for surgery at the present time was precipitated by Mr. Sykes' pain, as resulting from the effects of the accident rather than the underlying deficiency in the spinal column.
Following the hearing on the petition for benefits, the judge of compensation claims found that the workplace accident was the major contributing cause of Mr. Sykes' need for back surgery. The judge relied on the substance of Dr. Kaplan's medical testimony rather than the doctor's conclusory assertion regarding major contributing cause. The judge also relied on Mr. Sykes' long history of performing manual labor and the fact that he had not experienced back pain or disability before the accident. The evidence and the inferences drawn from the evidence led the judge to conclude that Mr. Sykes had established the legal requirement of major contributing cause.
Based on these findings, the judge of compensation claims rendered a final order directing Crawford and Company to pay for the back surgery Dr. Kaplan had recommended and to pay Mr. Sykes temporary partial disability benefits from December 31, 1996 until the future date of his maximum medical improvement. Closet *381 Maid and Crawford and Company then filed a timely notice of appeal to review the final order in this court.
We begin by examining section 440.09(1)(b), Florida Statutes (Supp.1994), which defines the coverage that is available to an injured worker if medical treatment is required by the combination of a compensable workplace accident and a pre-existing disease or condition. According to this statute:
If an injury arising out of and in the course of employment combines with a preexisting disease or condition to cause or prolong disability or need for treatment, the employer must pay compensation or benefits required by this chapter only to the extent that the injury arising out of and in the course of employment is and remains the major contributing cause of the disability or need for treatment.
§ 440.09(1)(b), Fla. Stat. (Supp.1994).[1] It is thus no longer enough for an injured worker to show that a workplace accident is causally related a particular injury, as in Reynolds v. Whitney Tank Lines, 279 So.2d 293 (Fla.1973), or that the accident contributed to the need for treatment. Coverage is available under the statute only if the workplace accident "is and remains the major contributing cause of the disability or need for treatment."
Whether the judge of compensation claims properly awarded medical benefits in this case depends on the meaning of the phrase "major contributing cause." When interpreting a statute, the court must look first to the plain meaning of the terms used in the statute itself. See Moonlit Waters Apartments, Inc. v. Cauley, 666 So.2d 898 (Fla.1996); Acosta v. Richter, 671 So.2d 149 (1996). If the language and meaning are clear, the court must interpret the statute according to the ordinary meaning of its terms, and may not resort to extrinsic aides to statutory construction. See McLaughlin v. State, 721 So.2d 1170 (Fla.1998); Rhodes v. State, 704 So.2d 1080 (Fla. 1st DCA 1997).
Although the phrase "major contributing cause" is not defined in the Workers' Compensation Law, the meaning of this phrase is sufficiently clear from the language of section 440.09(1)(b), Florida Statutes (Supp.1994). The first definition of the term "major" listed in nearly all dictionaries is "greater in dignity, rank, importance, or interest." See, e.g., Webster's 3rd New International Dictionary, Unabridged (1971); see also L.B. v. State, 700 So.2d 370 (Fla.1997)(noting that the courts may refer to dictionary definitions to ascertain the plain meaning of a term used in a statute). It follows that if there are two causes for a disability or the need for treatment, the workplace accident must be the "greater" of the two causes. Section 440.09(1)(b) employs the definite article "the" to modify the phrase "major contributing cause." Hence, the statute is not satisfied merely by showing that the workplace accident is among the major causes. The use of the term "the" plainly signifies that the workplace accident must be greater than any other cause contributing to the disability or need for treatment. See Orange County MIS Department v. Hak, 710 So.2d 998 (Fla. 1st DCA 1998).
Given this interpretation of the phrase "major contributing cause" in section 440.09(1)(b), Florida Statutes (Supp. 1994), we conclude that coverage is available if the workplace accident contributes more to the disability or need for treatment than any other single cause. This does not mean, however, that the workplace accident must be a greater cause than all other causes combined. Such an interpretation would impose a requirement beyond that which is stated in the statute. *382 The courts have judicial power to interpret statutes, but that power cannot be used as a license to assume the prerogative of the legislature. See Hancock v. Board of Public Instruction, 158 So.2d 519 (Fla.1963). Hence, we do not read into section 440.09(1)(b) a requirement that the industrial accident must account for more than fifty percent of the need for benefits. Instead, by the terms of the statute, the workplace accident must be greater in significance than any other single cause.
Although the major contributing cause standard in section 440.09(1)(b) requires the judge of compensation claims to determine relative degrees of causation, the method of proving causation has not changed. Section 440.09(1), Florida Statutes (Supp.1994), states that "[t]he injury, its occupational cause, and any resulting manifestations or disability shall be established to a reasonable degree of medical certainty and by objective medical findings." This language was not contained in the previous version of section 440.09, but it accords with and confirms the existing law on the subject of causation.
Before the enactment of section 440.09(1), Florida Statutes (Supp.1994), the case law held that causation must be proven to a reasonable degree of medical probability. But many of the opinions also referred to "reasonable medical certainty," and used that phrase interchangeably with "reasonable medical probability." See, e.g., Turner v. Harmon, 438 So.2d 1030 (Fla. 1st DCA 1983); Horse Haven v. Willit, 438 So.2d 123 (Fla. 1st DCA 1983); Castro v. Florida Juice Division, 400 So.2d 1280 (Fla. 1st DCA 1981). Indeed, Black's Law Dictionary 1273 (7th ed.1998), indicates that the phrases "reasonable medical probability" and "reasonable medical certainty" are merely different ways of expressing the same concept. Consistent with the long-standing usage of this terminology, we conclude that the statutory use of the phrase "reasonable medical certainty" does not reflect any departure from the established standard of proof.
We further conclude that section 440.09(1), Florida Statutes (Supp.1994), does not invariably require medical evidence to show that a workplace accident is the major contributing cause of a disability or need for treatment. In some cases, the connection between the accident and the injury may be so clear that it does not require medical proof. For example in, Haas v. Seekell, 538 So.2d 1333 (Fla. 1st DCA 1989), we held that a construction worker who had been struck on the head by a truss was not obligated to present medical evidence that the accident caused organic brain damage. Likewise, we doubt that the legislature intended to require medical evidence of causation in a case in which an employee's arm is severed by a machine at work. Such a requirement would compel a needless presentation of evidence.
In contrast, medical evidence may be essential when the circumstances do not permit causation to be determined on matters which are susceptible of observation or other sensory perception by lay witnesses. This is often the case with injuries which are not readily observable. See Crest Products v. Louise, 593 So.2d 1075 (Fla. 1st DCA 1992); Arand Construction Co. v. Dyer, 592 So.2d 276 (Fla. 1st DCA 1991); Computer Products, Inc. v. Williams, 530 So.2d 1006 (Fla. 1st DCA 1988); Vero Beach Care Center v. Ricks, 476 So.2d 262 (Fla. 1st DCA 1985). We have thus held, for example, that medical evidence was required to show that a workplace accident caused a psychiatric condition, see Ackley v. General Parcel Service, 646 So.2d 242 (Fla. 1st DCA 1994), a soft tissue injury, see Peters v. Armellini Express Lines, 527 So.2d 266 (Fla. 1st DCA 1988), or hypertension. See Handy v. Golden Gem Growers, Inc., 454 So.2d 69 (Fla. 1st DCA 1984). The injuries in those cases required medical proof, presumably because the accompanying events would not support a determination of causation based on matters which the lay witnesses *383 were capable of perceiving and understanding.
This distinction, between situations where medical expertise is essential, and other situations where facts established through lay testimony may establish causation, necessarily depends on the particular circumstances of each case. Section 440.09(1), Florida Statutes (Supp. 1994), does not compel a different approach or alter the long-recognized principle that the cause of a workplace injury may be established by either medical or lay evidence. See, e.g., Orange County Bd. of County Commissioners v. Brenemen, 233 So.2d 377 (Fla.1970); Holiday Foliage v. Anderson, 642 So.2d 94 (Fla. 1st DCA 1994); Broadfoot v. Albert Hugo Ass'n, Inc., 478 So.2d 863 (Fla. 1st DCA 1985); Daytona Linen Service v. Davis, 454 So.2d 46 (Fla. 1st DCA 1984).
The judge's determination of major contributing cause in the present case is supported by both medical and lay testimony. Dr. Kaplan indicated that the recommended surgery was intended to alleviate the ongoing pain which was occasioned by the workplace accident. The doctor identified the internal process which produced such pain, and Mr. Sykes described the manner in which he was struck by the falling box at work. In addition, Mr. Sykes noted that he had not experienced such back pain in the past. There was evidence indicating that Mr. Sykes had an exemplary work history, performing manual labor for many years without prior physical problems, and suggesting that he is not an opportunist or malingerer. The judge was entitled to rely on all of these circumstances in finding that there was sufficient proof as to the statutory requirement of major contributing cause.
Although Dr. Kaplan, in a letter prepared by counsel for Closet Maid and Crawford and Company, described Mr. Sykes' pre-existing condition as the major contributing cause of the need for medical treatment, this recitation is not conclusive and is negated by the substance of the doctor's testimony. Indeed, during the course of Dr. Kaplan's testimony it was recognized that the courts had not yet fully defined the major contributing cause concept. And the judge's determination of reasonable medical certainty depends on the substance of the evidence, rather than the use of the "reasonable medical certainty" terminology, or any other so-called "magic words," by a medical witness. Willit, 438 So.2d at 124; see also, e.g., Caldwell v. Halifax Convalescent Center, 566 So.2d 311 (Fla. 1st DCA 1990); Daytona Linen Service v. Davis, 454 So.2d 46 (Fla. 1st DCA 1984). As explained in Bradley v. Kraft Foods, Inc., 609 So.2d 748 (Fla. 1st DCA 1992), which notes that medical testimony sometimes contains legal terminology used in a manner which does not encompass the proper legal standard, the evidence should not be turned into a game of semantics. Instead, the resolution of such factual issues remains within the adjudicatory function of the judge based on the substance of the evidence presented, as measured against the specific statutory requirements regarding the evidentiary standard applicable to the determination. See Tampa Bay Moving Systems v. Frederick, 433 So.2d 628 (Fla. 1st DCA 1983).
Because the determination of major contributing cause is an issue of fact, the decision is one that is reviewable on appeal by the competent substantial evidence test. A finding of major contributing cause will ordinarily be affirmed if the record contains competent substantial evidence that the workplace accident contributed more to the claimant's disability or need for treatment than any other single cause. The evidence in the present case is sufficient to support a finding of major contributing cause under the standard we have articulated here. However, the judge of compensation claims did not have the benefit of this opinion or other controlling precedent when he decided the issue. In order to be certain whether the judge would have awarded benefits under the *384 major contributing cause standard as it is now defined, we remand the case in light of this opinion.
In summary, we conclude that the term major contributing cause in section 440.09(1)(b), Florida Statutes (Supp.1994), refers to a cause that contributes more to the claimant's disability or need for treatment than any other single cause. A finding of major contributing cause can be supported by medical or lay testimony, or both, depending on the circumstances involved. Whether the workplace accident is the major contributing cause of a particular disability or need for treatment is a factual issue that is reviewed on appeal by the competent substantial evidence test. The decision in this case is remanded to the judge of compensation claims in light of these standards.
Remanded.
BARFIELD, C.J., ERVIN, JOANOS, ALLEN, WOLF, WEBSTER, DAVIS, VAN NORTWICK and PADOVANO, JJ., concur.
KAHN, J., concurs with written opinion.
BENTON, J., concurs in part and dissents in part with written opinion, in which BOOTH and MINER, JJ., concur.
BROWNING, J., concurs in part and dissents in part with written opinion, in which LAWRENCE, J., concurs.
KAHN, J., concurring.
It appears to me that the critical issue in this case is whether a judge of compensation claims may consider non-medical evidence in order to ultimately disagree with a medical expert's attempt to quantify major contributing cause for purposes of section 440.09(1)(b), Florida Statutes (Supp. 1994). I agree with the majority that the JCC may properly do so. I do not join, however, with the majority's discussion following its assertion that section 440.09(1) "does not invariably require medical evidence to show that a workplace accident is the major contributing cause of a disability or need for treatment." Op. at 382. By its terms, the statute requires the JCC to determine that an employee has suffered an accidental injury or death arising out of work performed in the course and scope of employment. Moreover, the injury, its occupational cause, and any resulting manifestations or disability must be established by the claimant to a reasonable degree of medical certainty and by objective medical findings. Certainly, cases may arise where the medical cause of an injury or condition is conceded, but the employer argues that the accident did not occur in the course and scope of employment. Such a situation is not, however, within the purview of the majority's discussion of causation. In my view, the statutory requirement will call for medical proof in every case where the medical aspect of occupational causation is made an issue. I am unable to completely secernate the concept of major contributing cause from the overriding concept of occupational cause.
As both the majority and the dissent recognize, cases will arise where no medical evidence is required because the causal connection is readily observable. Because the present case is not one of those cases, and, more to the point, because medical evidence of causation exists in the present case, that part of the majority's analysis suggesting that lay testimony alone may, depending "on the particular circumstances of each case," be sufficient to establish causation is surplus. Op. at 383.
I would also find another basis for agreeing that the JCC must be the ultimate arbiter of factual matters, including the statutory concept of major contributing cause. Were we to treat major contributing cause as a purely medical term, we would be placing the resolution of a legal question into the hands of a physician. Nothing in the workers compensation statute suggests that major contributing cause is a medical term. More likely, it is a legal term, in the nature of phrases such as "proximate cause" and "legal cause". Physicians should provide factual *385 and opinion evidence concerning medical issues. No case, however, should turn merely on the ability, or lack of ability, of an expert to artfully spin language.
In sum, I would conclude that the statute requires medical evidence of causation as a threshold in virtually every case. The further determination of major contributing cause under the particularized circumstances envisioned by section 440.09(1)(b) is one to be made by the JCC in consideration of all the evidence, but remains sequential to the underlying determination of causation required by section 440.09(1).
BENTON, J., concurring in part and dissenting in part.
Wallace D. Sykes was awarded certain medical benefitsthe judge of compensation claims authorized surgical removal of bony spinal structures and arthritic spursand disability payments were awarded until he recovers from surgery and is able to return to work.[2] I concur in the court's decision not to affirm the award of these benefits, but I do not agree that remand is appropriate, and respectfully dissent from that part of the decision.
Two witnesses testified in the proceedings below: Mr. Sykes himself[3] and Barry Kaplan, his treating physician.[4] Neither testified that the accident at work was the major contributing cause of Mr. Sykes's impairment,[5] disability, or need for back surgery.[6] Dr. Kaplan testified to the contrary.[7] *386 There was, in short, a failure of proof. The judge of compensation claims should, therefore, have denied the petition for benefits.

A Reasonable Degree Of Medical Certainty Required
The medical testimony in the present case attributed seventy-five percent of Mr. Sykes's impairment, disability, and need for treatment to a preexisting condition. The issue is not merely whether the statute "require[s] medical evidence to show that a workplace accident is the major contributing cause of a disability or need for treatment." Ante at 382. The issue is also whether the statute permits the judge of compensation claims to reject uncontroverted medical testimony that the workplace accident was not the major contributing cause on the basis of things like an employee's "exemplary work history." Ante at 383.
Today's ruling departs dramatically from principles deeply embedded in precedent and forcefully reiterated in section 440.09(1), Florida Statutes (1995). Not only does this frustrate the legislative intent of the major contributing cause amendments[8]which were designed in part to tighten proof requirements on questions of causationbut it also invites arbitrary decision making under the Workers' Compensation Law generally. The majority opinion authorizes findings of major contributing cause on the basis of lay testimony we have heretofore repeatedly held incompetent to prove even a causal link, but offers no justification for ignoring precedent and statute[9] alike.

Lay Testimony Insufficient
In Arand Construction Co. v. Dyer, 592 So.2d 276 (Fla. 1st DCA 1991), we explained why lay testimony alone was not enough to establish causation, even under the less stringent and more straightforward "some causative connection" standard then in force:
In the case at hand, the JCC based her finding of a causal connection on the testimony of the claimant: "I find that the testimony of the employee/claimant constitutes competent substantial evidence to establish the required causal connection between the accident and the resultant injury because the symptoms which he is experiencing are within the actual knowledge of the employee/claimant" (emphasis added). Applied in this manner, the rule [requiring medical evidence] is rendered meaningless. The claimant's awareness of his own symptoms says nothing about the causes of those symptoms. In this case, the claimant knew that his back hurt; he could not, and did not, testify that his pain was caused either by the lifting incident or by an ongoing degenerative arthritic condition.
Id. at 281. An important difference between the present case and Arand is that *387 the question of causation is much more intricate here because the major contributing cause standard applies in the present case. This difference calls for more, not less, deference to expert medical testimony.
Before section 440.09(1) required proof to a reasonable degree of medical certainty, our cases required claimants to prove industrial causation to a reasonable degree of medical probability. See Thomas v. Salvation Army, 562 So.2d 746, 749 (Fla. 1st DCA 1990); Computer Prods., Inc. v. Williams, 530 So.2d 1006, 1007 (Fla. 1st DCA 1988); Holmes v. Homosassa Springs, Inc., 466 So.2d 1236, 1237 (Fla. 1st DCA 1985); Turner v. Harmon, 438 So.2d 1030, 1031 (Fla. 1st DCA 1983); Scotty's, Inc. v. Jones, 393 So.2d 657, 658-59 (Fla. 1st DCA 1981); Decks, Inc. of Fla. v. Wright, 389 So.2d 1074, 1076 (Fla. 1st DCA 1980); see also, Orange County Bd. of County Comm'rs v. Brenemen, 233 So.2d 377, 379 (Fla.1970).
Lay testimony was not enough to show so much as a causal connection, unless a cause was readily observable.[10]See Arand, 592 So. at 281; Sunshine Plumbing v. Benecke, 558 So.2d 162, 165 (Fla. 1st DCA 1990); Turner, 438 So.2d at 1032; Metric Constructors, Inc. v. Chiles, 429 So.2d 1292, 1293 (Fla. 1st DCA 1983); University Inns v. Davis, 413 So.2d 128, 130 (Fla. 1st DCA 1982); McCall v. Dick Burns, Inc., 408 So.2d 787, 792 (Fla. 1st DCA 1982); Scotty's, 393 So.2d at 659; Decks, 389 So.2d at 1076.
"For conditions not readily observable or discoverable without medical examination, proof of causation requires medical testimony based on reasonable medical probability [certainty, for accidents on and after January 1, 1994]...." Handy v. Golden Gem Growers, Inc., 454 So.2d 69, 70 (Fla. 1st DCA 1984); see Brasington Cadillac-Oldsmobile v. Martin, 641 So.2d 442, 445 (Fla. 1st DCA 1994); Thomas, 562 So.2d at 749; Computer Prods., 530 So.2d at 1007; Vero Beach Care Ctr. v. Ricks, 476 So.2d 262, 264 (Fla. 1st DCA 1985); Osceola County Comm'rs v. Hand, 458 So.2d 1134, 1135 (Fla. 1st DCA 1984); University Inns, 413 So.2d at 130.
In "a case in which an employee's arm is severed by a machine at work," ante at 382, lay testimony can establish a causal connection with reasonable medical certainty, to be sure. But this is not such a case. Even under the standard as it existed before January 1, 1994, lay testimony would not have been enough to establish the cause of soft tissue injuries like those at issue here. Mr. Sykes testified that his back and his neck hurt, and when they hurt, but such testimony has never been enough to establish industrial causation. See, e.g., Arand, 592 So.2d at 281; Peters v. Armellini Exp. Lines, 527 So.2d 266, 268-69 (Fla. 1st DCA 1988).
Such testimony is clearly insufficient under the new major contributing cause provisions. By requiring proof to "a reasonable degree of medical certainty," § 440.09(1), Fla. Stat. (1995), that the industrial cause is the major contributing cause, the statute now lays down a more exacting standard of proof of causation than before. See, e.g., In re Klinsky, 47 Van Natta 872, 874 (Or.Work.Comp.Bd. 1995) (holding that which cause was the major contributing cause of a back condition *388 "must be resolved on the basis of expert medical evidence"). Mr. Sykes did not meet that more exacting standard here.

The Industrial Accident Not Proven To Be The Major Contributing Cause
Modeled on an Oregon statute,[11] section 440.09(1), Florida Statutes (1995), provides that workers' compensation benefits are payable only when the
injury, its occupational cause, and any resulting manifestations or disability shall be established to a reasonable degree of medical certainty and by objective medical findings.
Specifically addressing injuries that employees with preexisting conditions sustain, section 440.09(1)(b), Florida Statutes (1995), provides:
If an injury arising out of and in the course of employment combines with a preexisting disease or condition to cause or prolong disability or need for treatment, the employer must pay compensation or benefits required by this chapter only to the extent that the injury arising out of and in the course of employment is and remains the major contributing cause of the disability or need for treatment.
With respect to an interlocking statutory provision, we recently said in Hunt v. Exxon Co. USA, 747 So.2d 966 (Fla. 1st DCA 1999):
The relationship factor is defined in section 440.02(32), Florida Statutes (1995), which states:
(32) "Arising out of" pertains to occupational causation. An accidental injury or death arises out of employment if work performed in the course and scope of employment is the major contributing cause of the injury or death.
Id. at 973. These provisions superseded prior law under which an employee could establish compensability by showing only some causal connection, however slight, between work and a disability or need for treatment.
In order to prove causationwe have decided since the major contributing cause amendments took effectthe statute requires the claimant to put on
proof of two elements: (1) the claimant must have been performing work in the course and scope of employment at the time of the accident or injury; and (2) there must be proof that the employment constituted more than a contributing, competent, precipitating or accelerating cause of the accident or injury.
Id. At issue here is what must be shown to prove "more than a contributing, competent, precipitating or accelerating cause."
We have visited this question before. See Orange County MIS Dep't v. Hak, 710 So.2d 998, 999 (Fla. 1st DCA 1998); Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 642 (Fla. 1st DCA 1996). The court today overrules these decisions[12]sub *389 silentio in arriving at a novel interpretation of the statutes in question.
The majority opinion redefines "the major contributing cause" as "a cause that contributes more to the claimant's disability or need for treatment than any other single cause." Ante at 384. Thus where eight non-industrial causes each contribute eleven per cent and a work-related cause contributes twelve per cent, the disability is compensable and the employer is responsible for treatment. This is very clearly at odds with legislative intent. The statute contemplates aggregating industrial causes on the one hand and non-industrial causes on the other and determining whether the industrial causes contributed more than the non-industrial causes.
The majority opinion's approach to major contributing cause is bound to create incongruous, indeed indefensible, results: Where a work-related cause contributes forty-nine per cent and a single non-industrial cause contributes fifty-one per cent, compensability would be denied, while a claimant could recover where a work-related cause contributes only thirty-four per cent if two non-industrial causes each contribute thirty-three per cent.

The Oregonian Paradigm Overlooked
For the major contributing cause amendments, the Legislature took as its model certain statutory provisions enacted in Oregon,[13] including an Oregon statute which provided:
If a compensable injury combines with a preexisting disease or condition to cause or prolong disability or a need for treatment, the resultant condition is compensable only to the extent the compensable injury is and remains the major contributing cause of the disability or need for treatment.
Or.Rev.Stat. § 656.005(7)(a)(B) (1993). The majority opinion ignores the Oregon casesand accepted canons of statutory *390 construction[14]in arriving at its own improbable interpretation of Florida's major contributing cause provisions.
The Oregon courts have emphatically rejected the view that the precipitating cause of an injury or disease is necessarily the major contributing cause. See Dietz v. Ramuda, 130 Or.App. 397, 882 P.2d 618, 619-20 (1994) (upholding disallowance of a claim where a preexisting, albeit asymptomatic, condition had been deemed the major contributing cause, notwithstanding the agreement of all five physicians who testified that the workplace had precipitated the injury).
To satisfy the "major contributing cause" standard, claimant must establish that his compensable injury (and/or work activities) contributed more to the claimed condition than all other factors combined. See, e.g., McGarrah v. SAIF, 296 Or. 145, 146, 675 P.2d 159 (1983). In other words, the persuasive medical opinion must evaluate the relative contribution of different causes and explain why the compensable injury (and/or work activities) contributed more to the claimed conditions than all other causes or exposures combined. See Dietz v. Ramuda, 130 Or.App. 397, 882 P.2d 618 (1994), rev dismissed 321 Or. 416 (1995). Furthermore, the fact that a work injury or work activities precipitated the symptoms of a condition does not necessarily mean that the injury or activities were the major contributing cause of the condition. Id.; see also Robinson v. SAIF, 147 Or.App. 157, 162, 935 P.2d 454 (1997).
In re Padilla, 51 Van Natta 1693 (Or. Work.Comp.Bd. Oct. 6, 1999). See also Conner v. Connecticut Indem. Co., 139 Or.App. 421, 912 P.2d 413, 414 (1996) ("The Board found that the work injury was the major contributing cause of the onset of symptoms of the degenerative disc disease but that the evidence did not support a finding that the industrial injury continued to be the major contributing cause of the degenerative disc disease being symptomatic after April 18, 1994.").
"`Major contributing cause' means that the work activity or exposure contributes more to causation than all other causative agents combined." In re Haley, 51 Van Natta 1786 (Or.Work.Comp.Bd. Oct. 20, 1999). Before Florida enacted the major contributing cause amendments, the Oregon Supreme Court had definitively construed "the major contributing cause." See McGarrah v. SAIF, 296 Or. 145, 675 P.2d 159, 172 (1983) ("If the at-work conditions, when compared to non-employment exposure, are the major contributing cause of the claimant's disease or disorder, then the claimant is eligible for compensation.").

Conclusion
By authorizing an award of benefits on remand despite uncontroverted expert opinion that Mr. Sykes's preexisting conditionnot the industrial accidentis the major contributing cause, the majority opinion effectively repudiates the statutory scheme. To give effect to legislative intent, we should instead travel "the Oregon trail" the Legislature blazed in the major contributing cause amendments.
In order to establish the compensability of a combined condition, claimant must show that the work injury is the "major contributing cause" of his combined condition or need for treatment. ORS 656.005(7)(a)(B). In making that determination, the Board must evaluate the relative contribution of the preexisting *391 condition and the work injury and decide which was the primary cause of the combined condition or need for treatment. SAIF v. Nehl, 149 Or.App. 309, 311-12, 942 P.2d 859 (1997), rev. den. 326 Or. 389, 952 P.2d 62 (1998); Dietz v. Ramuda, 130 Or.App. 397, 401, 882 P.2d 618 (1994). Because that evaluation involves a complex medical question, the Board must generally rely on expert medical evidence. See Uris v. State Compensation Department, 247 Or. 420, 424-26, 427 P.2d 753 (1967).
Worldmark The Club v. Travis, 161 Or. App. 644, 984 P.2d 898, 901 (1999). The present case also turns on a complex medical question. Under a long line of Florida precedent and the controlling Florida statutes alike, the judge of compensation claims erred in rejecting the uncontradicted expert medical evidence, and should not be authorized to repeat the error on remand.
BROWNING, J. concurring in part and dissenting in part.
I agree with this court's decision that the award of benefits to Mr. Sykes was proper, but I disagree that remand is appropriate. Also, I disagree with the court's decision that the "major contributing cause" as per the provisions of section 440.09(1)(b), Florida Statutes (Supp.1994), refers to a cause that contributes more to the claimant's disability or need for treatment than any other single cause.
I would affirm the compensation award to Mr. Sykes because it is supported by competent substantial evidence. Dr. Kaplan, the only expert who testified, stated without equivocation that Mr. Sykes had a preexisting condition, but his sole need for treatment was to mitigate pain that was caused by Mr. Sykes' industrial injury. Significantly, Dr. Kaplan also testified that Mr. Sykes' preexisting injury would have caused a need for treatment, but Kaplan could not say when such a need would probably occur and, therefore, could not say if the need would occur during the anticipated work career of Mr. Sykes. Thus, the only medical testimony supports a need for treatment for symptoms caused by an industrial injury, and any cause to the contrary is purely speculative. Given this evidence, the JCC was within his permissible role as the trier-of-fact to award compensation to Mr. Sykes. Trujillo v. Southern Wine & Spirits, 525 So.2d 481 (Fla. 1st DCA 1988).
However, I fail to see the benefit of a remand with the attendant cost and delay. The JCC reached a decision based upon competent substantial evidence and should be affirmed. In view of this circumstance, remand is a useless and unnecessary act.
Much of the conflict surrounding this appeal centers around the prerogative of the JCC to determine this case based upon evidence other than Dr. Kaplan's conclusory opinion that the "major contributing cause" of Mr. Sykes' need for treatment was his preexisting condition, spinal stenosis. I do not believe, after considering the substance of Dr. Kaplan's testimony, that the JCC was legally bound to accept Dr. Kaplan's conclusory statement that Mr. Sykes' preexisting injury was the "major contributing cause" of his need for treatment. It is well established that an opinion by an expert on the ultimate issue, such as major contributing cause, while permissible, is not conclusive on the trier-of-fact when such testimony is inconsistent with other testimony of the same witness. Above All Drywall v. Shearer, 651 So.2d 195 (Fla. 1st DCA 1995), Jackson v. Publix Supermarkets, Inc., 520 So.2d 50 (Fla. 1st DCA 1987).
Dr. Kaplan's testimony concerning "major contributing cause" was confusing, contradictory, and subject to different interpretations upon which reasonable men could differ.[15] The JCC determined the *392 issue in favor of Mr. Sykes, and he should be affirmed based on the substance of Dr. Kaplan's testimony, and not on the conclusory part of his testimony relating to "major contributing cause," which was not unimpeached, and consistent to the extent that the JCC is required to adopt it.
Further, I disagree with the court's opinion that "major contributing cause" means a cause that contributes more to a claimant's disability or need for treatment than any other single cause when there is more than one non-industrial cause. I believe that the legislature intended by enacting the provisions of section 440.09(1)(b), Florida Statutes (Supp.1994), to bar a claimant from recovering when an industrial injury does not constitute more than fifty percent of the cause of a disability or need for treatment. This interpretation is consistent with the standard that exists in general civil cases; and consistent with an opinion of this court that addresses the specific issue of "major contributing cause." Gooding v. University Hospital Building, Inc., 445 So.2d 1015 (Fla.1984); Hunt v. Exxon Co. USA, 747 So.2d 966 (Fla. 1st DCA 1999). Accordingly, I agree with Judge Benton's dissentas it relates to "major contributing cause" requiring that the industrial injury contributed more than fifty percent of the cause of a disability or need for treatmentand see no need to comment further on this issue.
For these reasons, I would affirm the JCC's award of benefits to Mr. Sykes without remand.
NOTES
[1] The phrase "major contributing cause" is also used in section 440.02(32), Florida Statutes. This section provides that "[a]n accidental injury or death arises out of employment if work performed in the course and scope of employment is the major contributing cause of the injury or death."
[2] Closet Maid and Crawford and Company furnished medical and other benefits voluntarily until Mr. Sykes reached maximum medical improvement initially. These are not in dispute here.
[3] Mr. Sykes testified live at the final hearing and his deposition came in evidence. He reported experiencing back and neck pain subsequent to the accident, but not immediately afterwards. Although he acknowledged that, prior to the accident, he may have occasionally had "minor" back pain, he testified that he had no "significant" back problems prior to the work-related accident.
[4] Dr. Kaplan, the only medical expert in the present case, testified that the injury Mr. Sykes sustained at work was not the major contributing cause of his disability or need for back surgery. He opined that

the majority of what is wrong with Mr. Sykes is preexisting and/or degenerative in nature and predated the alleged industrial accident. In particular, this includes but is not limited to the spinal stenosis which is what needs to be operated on, if surgery were to be performed. Further, although by history Mr. Sykes was not symptomatic prior to his industrial accident, the "major contributing cause" of his disability and need for medical treatment is the preexisting and/or degenerative conditions.
In rendering his opinion on causation, Dr. Kaplan was asked to assume no prior back problems. On cross-examination, Dr. Kaplan conceded that, based on Mr. Sykes's putative medical history (no prior problems), the accident at work caused back pain in the sense that turning on a light switch causes a light to go on, assuming electric power generating facilities are operating and that transformers, transmission lines, wiring, socket, plug, cord, fixture, and light bulb are all already in place.
But he reiterated that the major cause contributing to Mr. Sykes's discomfort and need for surgery was the preexisting condition:
A Well, actually, he has a condition that he was born with in his low back where the canal is just small. And he does have degenerative arthritis, and you take a small canal and you make it even smaller.
[5] Dr. Kaplan testified:

Q Now, without the surgery you state that he would have a twelve percent impairment rating. And do I understand correctly that nine percent of that would be preexisting and three percent related to the industrial accident?
A That's correct.
[6] Dr. Kaplan testified that surgery would increase Mr. Sykes's impairment rating, but would not affect his analysis of the relative causes:

Q Assuming that he did proceed to have the surgery, based on your experience and your familiarity with the Guides, do you know what his rating would be?
A Yeah, I think that his ratingwell, it depends on how many surgeries he has. I would say that his rating would probably jump to the neighborhood of eighteen to twenty percent according to the Florida Impairment Guidelines depending upon how he did.
Q And how would that rating be apportioned between preexisting and related to the accident?
A I would say that the majorityI would go with a similar ratio. I would still say seventy percent was secondary. Seventy-five percent of his rating would be secondary to preexisting problems and twenty-five percent due to the accident.
[7] Q Okay. And, Doctor, although, and I understand your position on the preexisting condition, that you feel seventy-five percent of his condition is due to the preexisting problem and twenty-five percent contributed by the accident. Can you say that he would have needed medical treatment and surgery absent the accident?

A I think eventually he would have, yes sir.
Q But you can't say when?
A I cannot say when.
[8] The Workers' Compensation Law's "major contributing cause" provisions took effect on January 1, 1994. See Ch. 93-415, § 112, at 215, Laws of Fla.
[9] Section 440.09(1), Florida Statutes (1995), requires that a claimant prove his or her

injury, its occupational cause, and any resulting manifestations or disability ... to a reasonable degree of medical certainty and by objective medical findings.
[10] Cuts and burns are injuries whose causes may ordinarily be observed. In the present case, the grommet's breaking the skin on Mr. Sykes's scalp is an example of such an injury. But Mr. Sykes seeks benefits on account of injuries to his back and neck, not his scalp. Like the industrial causation of mental injuries, see Turner v. G. Pierce Wood Mem'l Hosp., 600 So.2d 1153, 1155-56 (Fla. 1st DCA 1992), the industrial causation of injuries to the soft tissues of the back and neck requires proof by medical testimony. See Arand Constr. Co. v. Dyer, 592 So.2d 276, 280-81 (Fla. 1st DCA 1991); Vero Beach Care Ctr. v. Ricks, 476 So.2d 262, 264 (Fla. 1st DCA 1985). Whenever a preexisting condition combines with a work injury, so that it is necessary to determine which is the greater or major contributing cause, see § 440.09(1)(b), Fla. Stat. (1995), medical testimony is a practical necessity.
[11] Or.Rev.Stat. § 656.005(7)(a)(B) (1993).
[12] In Orange County MIS Department v. Hak, 710 So.2d 998, 999 (Fla. 1st DCA 1998), a case indistinguishable from the present case, we overturned an award of benefits because the judge of compensation claims had rejected medical testimony that a preexisting condition was the major contributing cause of a secretary's work-related injury. The decision in Hak is not "controlling precedent," ante at 379, only because the majority opinion refuses to recognize it as such. See also Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 642 (Fla. 1st DCA 1996).

There we found no need to remand for further proceedings. Reversing the judge of compensation claims in Hak, we said:
The only medical expert below testified that the claimant's running in high-heel shoes [while in the course and scope of her employment] was not the major contributing cause [of] the pain and other symptoms experienced in the claimant's back [although it was the precipitating cause of the symptoms]. The medical expert explained that the claimant has suffered from a preexisting degenerative disc disease and succinctly stated that "I feel that the major contributing cause was the fact that this patient has had a degenerative disc disease in the past and has documented prior problems [with her back]."
Back injuries, as soft tissue injuries which are not readily observable, require medical evidence to establish causation. Teleflex, Inc. v. Arndts, 499 So.2d 45 (Fla. 1st DCA 1986). The claimant's lay testimony about the major contributing cause of her back condition is not competent evidence taken alone. In short, we conclude that the JCC's finding of major contributing cause is not supported by competent, substantial evidence.
710 So.2d at 999. Here, as in Hak, the medical evidence identified the accident at work as the precipitating cause of the claimant's disability and need for treatment.
But here, as in Hak, the sole medical opinion of record assigned a preexisting condition as the major contributing cause of the claimant's disability or need for treatment. Here, as in Hak, the award of benefits should be reversed outright. Mr. Sykes did not prove that the work-related accident was the major contributing cause of his disability or need for treatment.
[13] An important purpose of the amendments was to reduce workers' compensation premiums, in part by reducing coverage.

As you are aware, I have called a special session of the Legislature for November 1 through November 5. One of the important issues that will be addressed during this time is Florida's workers' compensation crisis. Because Floridians pay among the highest workers' compensation rates in the country, countless Florida businesses are contemplating closing their doors and laying off their workers.
. . . .
I have included ... my proposals, nearly all of which were included in the State of Oregon's successful workers' compensation reform efforts.... [M]y proposal is estimated to save closer to 25 percent off current rates. Letter from Lawton Chiles, Governor, State of Florida, to Stephen R. Wise, Florida State Representative (Oct. 22, 1993) (on file with the Florida State Archives). See generally Creston Nelson-Morris, Workers' Compensation in Florida: The History, People and Politics 116-28 (1995).
In enacting the new major contributing cause standard, the Legislature intended to reduce the number of injuries compensable under the workers' compensation system in order to reduce workers' compensation premiums. Senate Staff Analysis and Economic Impact Statement SB 12C (Nov. 1, 1993). After Senate Bill 12C passed, the Florida Insurance Commissioner approved an average 10.6 percent reduction in workers' compensation premiums. Nelson-Morris, supra, at 128.
[14] When the Legislature models a Florida statute after another jurisdiction's statute, we are to look to how the model has been interpreted by the courts of that jurisdiction. See State v. Aiuppa, 298 So.2d 391, 394 (Fla.1974) (holding that when a statute is patterned after a similar provision in another state's statute, "it is proper to resort to judicial constructions placed on the statute by the courts of the state whose statute provided the `model' in determining the proper construction"); Flammer v. Patton, 245 So.2d 854, 858-59 (Fla.1971) ("We have long held that when our Legislature adopts a statute from another state, we should adopt that state's judicial construction of the statute.").
[15] In addition to the testimony of Dr. Kaplan mentioned in the court's opinion, the dissent, and this opinion, the record contains the following testimony of Dr. Kaplan when questioned about the "major contributing cause" of Mr. Sykes' disability and need for treatment:

BY MR. CROOKE:
Q. Okay. And, Doctor, although, and I understand your position on the preexisting condition, that you feel seventy-five percent of his condition is due to the preexisting problem and twenty-five percent contributed by the accident. Can you say that he would have needed medical treatment and surgery absent the accident?
A. I think eventually he would have, yes, sir.
Q. But you can't say when?
A. I cannot say when.
Q. All right. So can you say in a very real sense that the accident causedwas the greater cause of the need for treatment when you saw him as opposed to the preexisting condition?
A. The greater cause of the need for treatment. (emphasis added)
. . . .
BY MR. CROOKE:
Q. Doctor, assuming the accuracy of his history that he did not have neck problems and if he had back problems that are minimal and he was working, he's a very strong man and he was working doing heavy work on a regular basis. And assuming the accuracy of the history that he gave to you and the one that I gave you today, do you have an opinion as to whether the need for treatment for those problems was primarily the major contributing cause was the accident?
MR. MASSEY: Object to the form.
BY MR. CROOKE:
Q. Again, using my example of the light switch.
A. Using your example of the light switch, I would agree that it was the major contributing cause of his need for me [sic] to see me and be treated by me, yes.
Q. And you wouldn't recommend the surgery at this point in time if he didn't have a rather disabling pain that he has complained to you about when he has seen you?
A. Correct.