ERVIN, J.,
dissenting.
It is unclear from the majority’s opinion whether it has concluded that the legislatures enactment of the major-contributing-cause (MCC) statutes has repealed the increased-hazard doctrine, recognized in this jurisdiction for 60 years. If the doctrine remains viable, I see no reason to remand for the judge of compensation claims (JCC) to determine whether the conditions of employment (here, a concrete walkway) created an increased risk to claimant. Remand for such purpose in Hernando County School Board v. Dokoupil, 667 So.2d 275 (Fla. 1st DCA 1995), was altogether appropriate in that, unlike the present case, there was no evidence of an increased hazard. The court specifically recognized that “[w]hen the fall is onto a level surface, compensability is justified when the surface itself is an unusual haz *495 ard, such as a hard concrete floor.” Id. at 276.
I confess my own uncertainty over the doctrine’s continued applicability; nevertheless, I see no need to reverse and remand for further proceedings, because, even assuming that the doctrine has been legislatively superseded, the order is, in my judgment, supported by competent, substantial evidence, and for that reason alone should be affirmed. While finding that the fall onto a concrete walkway was the “result” of a seizure and syncopal episode, the JCC also found that those conditions did not directly cause claimant’s injuries, but that his impact with the walkway was the MCC of the injuries. The judge next decided, after considering applicable case law, including Protectu Aiming Shutter Co. v. Cline, 154 Fla. 30, 16 So.2d 342 (1944), that a concrete surface constitutes a special hazard of employment. I am therefore of the opinion that further remand for the purpose directed by the majority is unnecessary, because it appears that the JCC has already made such finding.
In determining that the surface with which claimant’s body collided was a special hazard of employment, the JCC was obviously attempting to comply with the legal test of causation, which has traditionally been applied to idiopathic injuries in this jurisdiction. The increased-hazard doctrine is one part of the legal/medical causation test Professor Larson has advocated for determining the compensability of injuries occurring during the course of employment in which a personal contribution is involved. In adopting this test in Market Food Distributors, Inc. v. Levenson, 383 So.2d 726, 727 (Fla. 1st DCA 1980), we made the following pertinent observations:
Professor Larson’s analysis of the problem relating to idiopathic cases is helpful. He suggests the problem can best be resolved by considering the legal cause of the injury, and then, its medical cause. IB A. Larson, Workmen’s Compensation Law, 38.83 at 7-233 (1980). The inquiry focuses first upon what kind of exertion satisfies the legal test, ie., whether the injury is one caused by the employment, and, if the exertion is legally sufficient to support compensation, next whether medically it caused the , injury. Id. at 7-235. As to the legal test, if the employee brings to the job some personal element of risk unrelated to his employment (for example, a preexisting condition), before the injury can be found compensable, the employment must involve an exertion greater than that normally performed by the employee during his non-employment life. But, if the employee has no prior weakness or disease, any exertion connected with the employment and causally connected with the injury as a matter of medical fact is adequate to satisfy the legal test of causation. In both cases it is still necessary for a claimant to establish that medically the particular exertion causally contributed to the injury. Id. at 7-237.
(Emphasis added.)
As applied to idiopathic-fall cases, the legal test is satisfied by proof showing that the employment contributes to the risk or aggravates the injury. See Foxworth v. Florida Indus. Comm’n, 86 So.2d 147, 151 (Fla.1955). This test, of course, was devised at a time when, as we observed in Orange County MIS Department v. Hak, 710 So.2d 998, 999 (Fla. 1st DCA 1998), a claimant was required to prove only that the employment was a “contributing, competent, precipitating, or accelerating cause of the accident or injury.” It is entirely possible that the separate legal test of causation is no longer applicable by reason *496 of the legislative amendments. Nevertheless, it appears that the MCC statute in effect at the time of claimant’s accident,[1] pertaining to injuries suffered at a workplace in which a personal element is involved, still requires proof that the employment in some way contributes to the risk or aggravates an injury. We have interpreted the statute to mean that the employment contribution must be greater than any other single cause.[2] See Closet Maid v. Sykes, 763 So.2d 377, 381 (Fla. 1st DCA2000).
Thus, if the MCC amendments no longer demand the claimant to establish the legal cause of his injuries that were attributable in part to a preexisting condition, the claimant must still, in my judgment, supply sufficient medical proof that the workplace’s contribution to the risk was greater than any other single cause of the injuries suffered. Professor Larson explains the difference in proof between the two tests as follows:
Under the legal test, the law must define what kind of exertion satisfies the test of “arising out of the employment.”
Under the medical test, the doctors must say whether the exertion (having been held legally sufficient to support compensation) in fact caused this collapse.
2 A. Larson, Larsons Worker’s Compensation Law 46.03[1] (2003) [hereinafter Larson ].
Medical causation was proved in the case below not by the strength of a legal presumption, but through the testimony of witnesses relating that the concrete walkway on which claimant fell resulted in devastating injuries,[3] and that it was a hazard he would not normally encounter in his non-employment life, where a fall would far more likely occur on a carpeted or linoleum-covered floor; hence, the injuries he suffered at the workplace would reasonably be expected to be greater than, say, had he fallen at home.[4] Accordingly, it is my opinion that when a prior condition is involved, a claimant can establish that the employment was the MCC of injury by showing, through a combination of lay and medical proof, that the employment was the direct cause of the injury, and that it aggravated the claimant’s injuries or increased the risk of harm.
To explain my position further, I believe it helpful to examine the case law of the state of Oregon interpreting its MCC statutes. In Closet Maid, 763 So.2d at 389-91 (Benton, J., concurring and dissenting), it was pointed out that the Florida Legislature had modeled the MCC amendments after those in Oregon. In arguing that the *497 majority’s construction of the Florida provisions should comply with the interpretations given the parallel statutes by Oregon courts, Judge Benton reiterated the time-honored rule recognizing that when a Florida statute is patterned after that of another jurisdiction, Florida courts will apply a similar interpretation to the Florida statute. Id. at 390, n. 14.
In obedience to the above rule, I have undertaken an examination of pertinent Oregon cases, and it appears from my review that in order for a work-related activity to be considered the MCC of an injury or condition to which a personal element may have contributed, the evidence must reveal that such activity was the immediate, direct cause of the injury, and not a cause that may have simply contributed to the injury. In Portland Adventist Medical Center v. Buckallew, 124 Or.App. 141, 861 P.2d 380 (1993), the issue before the court was whether the employee’s diabetes-related neuropathy was simply a predisposition to, or was a cause of, his occupational disease, Charcots joint, an arthritic condition in his ankles characterized by the destruction of joint surfaces. A referee found that the claimant’s work activity (his on-the-job walking) was the MCC of his arthritic condition, and that his neuropathy created a predisposition to the condition, but did not cause it. Id. at 381. The Oregon Workers’ Compensation Board affirmed, and the employer appealed, contending before the Court of Appeals that the evidence showed that the claimant’s neuropathy was, in fact, the cause of the disease.
In rejecting the argument, the court emphasized the medical testimony, which opined that while a combination of the claimant’s personal and work-related trauma brought about the disabling condition, the claimant’s idiopathic condition, neuro-pathy, only caused a loss of feeling and thereby made him more susceptible to injury. In other words, “[t]he loss of feeling does not itself create trauma; it is trauma [the work activity] that causes the Char-cots joint.” Id. at 382. The court explained the rationale why the employment should be deemed the MCC of the injury, rather than the idiopathic condition, which was only remotely connected to the injury:
“An employer is responsible for a disease that a claimant who has a particular susceptibility or predisposition develops due in major part to conditions at work. The predisposition to disease is not a bar to compensability, if work causes the disease. In that sense, the employer takes that employee as it finds her. If, in contrast, a claimant develops a disease in major part because of factors personal to her that are independent of any activities or exposures either off or on the job, the claim is not com-pensable, even if work contributed to some degree to causing the disease.”
Id. (quoting Liberty N.W. Ins. Corp. v. Spurgeon, 109 Or.App. 566, 820 P.2d 851 (1991)) (emphasis added).
The distinction between an immediate, direct cause that results in injury and a contributing cause is further illustrated by Georgia Pacific Corp. v. Warren, 103 Or. App. 275, 796 P.2d 1246 (1990), in which compensation was sought for the claimants carpal tunnel syndrome. In appealing the order of the Workers’ Compensation Board awarding compensation, the employer relied upon an opinion of an examining physician stating that the disease was the slowing of the median nerves in the claimant’s wrists, which was entirely idiopathic and not affected by the employment. The court approved the Board’s order, explaining that the-, treatment sought was not for the slowing of the nerves, but for the carpal tunnel syndrome, which first caused the condition to *498 be symptomatic and disabling, and that the treatment did nothing to correct the underlying slowing of the median nerve. Id. at 1247. It further noted that the employer’s physician admitted that the carpal tunnel syndrome was brought on by the claimant’s work activity. Finding the Board’s order supported by competent, substantial evidence, the court affirmed it.
In the case at bar, while claimant’s idiopathic condition may have been a contributing factor in causing him to fall, just as the claimant’s preexisting conditions in Buckalleiv and Warren contributed to their compensable injuries, such personal element was not the MCC of his injuries, which the JCC explicitly found, based on the evidence,[5] was the direct result of his collision with a hazard that clearly aggravated the extent of his injuries, a concrete walkway.
The analysis of the Oregon Court of Appeals, in focusing on the immediate cause of the injury as a means of ascertaining the MCC of an employee’s injuries, is consistent with that of the JCC below, as well as of the Florida Supreme Court in Cline, which primarily considered the claimant’s fall onto a hard, concrete floor to be the cause of his injury, a skull fracture, resulting in his death, rather than what may have been the cause of the fall. Cline instructs that in circumstances in which the employment aggravates the risk or contributes to the injury, the emphasis should be placed on the immediate cause of the injury, rather than the cause of the accident; an approach I consider to be more consistent with the no-fault concept of workers’ compensation, instead of the fault-based system of negligence.
The hardness of the surface on which an employee may fall has long been considered an added hazard of employment. See Larson, 9.01[4][e] (quoting from the Scottish case of Wright & Greig, Ltd. v. M’Kendry, 56 S.L.R. 39, 11 B.W.C.C. 402 (1918), wherein the court observed that the employee was required to work at a place “which turned out to be a place of special danger, because but for the hard concrete floor the fatality would not or might not have occurred[.]”).
In the case at bar, competent, substantial evidence clearly supports the judge’s finding, based on the totality of the evidence, that claimant’s injuries were a direct result of his impact with a concrete walkway, and that this impact was the MCC of his injuries. In reviewing questions pertaining to aggravations of prior weaknesses, the responsibility of an appellate court is as follows:
Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point by the commission based on any medical testimony ... will not be disturbed on appeal.
Larson, 9.02[5] (emphasis added) (quoted with approval in Haas v. Seekell, 538 So.2d 1333, 1335-36 (Fla. 1st DCA 1989)). More recently, in Chavarria v. Selugal Clothing, Inc., 840 So.2d 1071 (Fla. 1st DCA 2003) {en banc), we ruled that the findings of a JCC in resolving conflicting medical opinions will be affirmed if they are supported by competent, substantial evidence, and it *499 appears the JCC did not overlook or ignore contrary opinions in the record. As I have stated, the JCC did all that any appellate court could reasonably expect him to do. Because I am of the firm belief that the order is supported by competent, substantial evidence, and the findings clearly display the reasons for his determination, I would affirm.

. Section 440.09(l)(b), Florida Statutes (2000), provides:
If an injury arising out of and in the course of employment combines with a preexisting disease or condition to cause or prolong disability or need for treatment, the employer must pay compensation or benefits required by this chapter only to the extent that the injury arising out of and in the course of employment is and remains the major contributing cause of the disability or need for treatment.

. The statute has since been amended to require the employer to pay compensation or benefits "only to the extent that the injury arising out of and in the course of employment is and remains more than 50 percent responsible for the injury as compared to all other causes combined[.]" 440.09(l)(b), Fla. Stat. (2003).

. A closed head injury and a left femur fracture led the JCC to direct the employer/carrier to provide claimant with, among other things, permanent total disability and assisted-living or attendant-care benefits. Neither of these awards has been challenged in this appeal.

. Claimant testified that the floor of his small apartment was 80 percent carpeted and 20 percent linoleum.

. Four of five expert medical witnesses opined that the MCC of claimant's injuries was the fall and impact of his body on the concrete walkway. The fifth, the employer’s expert, neurosurgeon John S. Boggs, while testifying that the MCC of claimant’s injuries was the seizure he suffered, admitted that the trauma claimant experienced resulting from the collision of his head on the walkway was the cause of his head injury, and not the seizure itself.